UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN VINCENZO,<br><br>Plaintiff,<br><br>v.<br><br>HEWLETT-PACKARD COMPANY, et al.,<br><br>Defendants. | Case No. 12-cv-03480-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Dkt. Nos. 40-41** |

## I.    INTRODUCTION

This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1101 *et seq.* Plaintiff John Vincenzo ("Plaintiff") filed this lawsuit against Defendants Hewlett-Packard Company ("HP"), 3Com Corporation Severance Benefit Plan ("3Com Severance Plan"), 3Com Severance Plan for Vice Presidents ("VP Severance Plan"), and 3Com Corporation 2003 Stock Plan ("Stock Plan"). Plaintiff alleges that Defendants violated ERISA § 502(a)(1)(B), 28 U.S.C. § 1132(a)(1)(B), by wrongfully denying him severance benefits and stock options after he was involuntarily terminated from his employment upon HP's acquisition of 3Com. Plaintiff further alleges that Defendants violated ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), by refusing to comply with Plaintiff's information requests, and therefore, should be assessed statutory penalties. The parties filed Cross-Motions for Summary Judgment on Plaintiff's ERISA claims as well as the applicable standard of review.[1] The Court held a hearing on June 21, 2013 at 9:30 a.m. For the reasons explained below, both Cross-Motions are

---

[1] Pursuant to the parties' stipulation and court order, Plaintiff's third claim for relief, a breach of contract claim against Defendant Stock Plan, is not addressed in the instant Cross-Motions. *See* Dkt. Nos. 37, 39.

GRANTED in part and DENIED in part.[2]

## II.   BACKGROUND

### A.   Factual and Procedural Background[3]

#### 1.   *3Com's VP Severance Plan and Retention Agreement*

Plaintiff was the Vice President of Corporate Marketing at 3Com.  As such, Plaintiff was a participant of the 3Com Severance Plan for Vice Presidents ("VP Severance Plan").  The section of the VP Severance Plan governing the terms of "Eligibility to Receive Severance Benefits" provides, in relevant part:

> Executives who are employed by the Company are eligible to receive benefits upon the termination of their employment with 3Com as a result of a (i) reduction-in-force, (ii) reorganization, or (iii) job elimination….

> Executives are not eligible to receive benefits under the VP Plan upon the occurrence of any of the following:
> - The Executive is terminated for reasons other than a reduction-in-force, reorganization or job elimination;
> - The Executive voluntarily terminates his/her employment;
> - The Executive refuses an offer of a comparable position (as determined by the Plan Administrator) at 3Com or, in the event of a sale, acquisition or other change of control of 3Com, its successor….

Dkt. No. 40-3 (Declaration of Jeannie Leahy in Support of Defendants' Motion for Summary Judgment, or in the Alternative, Summary Adjudication, on Standard of Review and Plaintiff's ERISA Claims ("Leahy Decl."), Ex. A (Administrative Record, bates-labeled HP 1-353)) (hereafter "HP") 25.  The VP Severance Plan, which was "Amended and Restated Effective September 14, 2009," further provides that "[a]ll rights to participate in and receive benefits from the VP Plan are governed solely by the terms and conditions of this Summary Plan Description,"

---

[2] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).
[3] The following constitutes facts which the parties have stipulated to be undisputed or which the Court found to be undisputed.  *See* Dkt. No. 40-1 (Joint Statement of Undisputed Material Facts for Parties' Cross-Motions on Summary Judgment, or in the Alternative, Summary Adjudication, on Standard of Review and Plaintiff's ERISA Claims) ("JSUF").

United States District Court
Northern District of California

1   which "supersedes and replaces all prior plan documents and summary plan descriptions

2   governing the VP Plan." *Id.*

3         When discussions regarding the acquisition of 3Com began, 3Com offered its "critical"

4   employees a Key Employee Retention Severance Benefits Agreement (hereafter "Retention

5   Agreement"), which purports to amend the terms of eligibility and severance benefits of the VP

6   Severance Plan.  Specifically, the Retention Agreement provides:

7             The terms of this [Retention] Agreement shall be governed by and
              administered pursuant to the provisions of the [VP Severance] Plan.

8             To the extent that there is any conflict between this Agreement and
              the terms of the Plan, the Plan provisions shall supersede and

9             control; *provided however that, notwithstanding the current Plan
              provisions or any amendments to the Plan after the Effective Date,*

10            *the terms of eligibility and the severance benefits for which the
              Employee is eligible shall not be less than those set forth in this*

11            *agreement.*

12  HP 42 (emphasis added).  The Retention Agreement further states that "the Company seeks to

13  confirm the Employee's eligibility for severance benefits to ensure the continued dedication and

14  objectivity of the Employee and to provide the Employee with additional financial security."  *Id.*

15        The Retention Agreement contains a similar provision governing the "Eligibility to

16  Receive Severance Benefits" as the VP Severance Plan.  Section 3 of the Retention Agreement

17  reads, in relevant part:

18            The Company shall provide the Employee with the severance
              benefits … upon the Company's involuntary termination of the

19            Employee's employment with 3Com as a result of a (i) reduction-in-
              force, (ii) reorganization, or (iii) job elimination….

20

21  HP 42.  However, the Retention Agreement does not include the same exceptions to eligibility

22  described in the VP Severance Plan.  *See id.*  Specifically, while the VP Severance Plan provides

23  that Executives are ineligible to receive severance benefits when "[t]he Executive refuses an offer

24  of a comparable position (as determined by the Plan Administrator) at 3Com or, in the event of a

25  sale, acquisition or other change of control of 3Com, its successor," the Retention Agreement does

26  not.  *See* HP 25, 42.  The Retention Agreement does provide, however, that "[i]f the Employee's

27  employment terminates for any reason other than the conditions specified in Section 3 of this

28  Agreement, then the Employee shall not be entitled to receive severance or other benefits under

3

1  this Agreement or any severance and/or benefit plans sponsored by the Company."  HP 43.

2              2.    *HP's Acquisition of 3Com and Offer of Employment*

3          In November 2009, HP announced its acquisition of 3Com.  Following HP's

4  announcement of the acquisition, HP began discussions with Plaintiff about a new role at HP as

5  the Directory of Marketing in the Europe, Middle East and Asia ("EMEA") regions, which would

6  have required Plaintiff to temporarily relocate from Massachusetts to England for a period of

7  twelve to thirty-six months.  HP 312.  On February 26, 2010, HP sent a letter to Plaintiff offering

8  him this position, which required Plaintiff to accept the offer by March 5, 2010.  HP 208-11.  HP's

9  acquisition of 3Com was complete in April 2010, at which time Plaintiff's position at 3Com was

10  eliminated.

11          While Plaintiff was interested in the HP job offer and relocation to England, he was

12  concerned about the relocation/ex-patriate package that he would be offered, among other things.

13  The offer letter sent on February 26, 2010 was silent about any relocation/ex-patriate package.  HP

14  208-11.  On March 1, 2010, Plaintiff wrote an email to HP's Director of Human Resources,

15  Martha Comfort, and HP's Vice President of World Wide Marketing and Plaintiff's manager,

16  Steve Dietch, explaining that he could not accept HP's offer completely until he saw and

17  understood the relocation/ex-patriate package.  HP 214.  Martha Comfort responded to Plaintiff's

18  email indicating that Plaintiff should follow up about the relocation package with Steve Dietch

19  and Beverly Webb.  HP 215-16.  Plaintiff responded to Martha Comfort's email indicating that he

20  would follow up with Steve Dietch.  HP 215.

21          Plaintiff signed and submitted HP's offer letter on approximately March 5, 2010.  Plaintiff

22  asserts that he "felt compelled" to do so because of HP's March 5, 2010 deadline.  HP 184

23  (Declaration of John Vincenzo in Support of Appeal re: Claim for Benefits ¶ 5).  However, at the

24  same time Plaintiff faxed his acceptance of the letter on approximately March 5, 2010, he also sent

25  HP a cover fax sheet with a handwritten note stating that he "could not completely accept the offer

26  without receiving information about the relocation and ex-patriate package."  HP 184, 305.

27  Neither the signed offer letter nor the fax cover sheet with Plaintiff's handwritten note is in

28  evidence before the Court.

United States District Court
Northern District of California

In March - April 2010, Plaintiff told Steve Dietch that even though he had not received the information on the relocation/ex-patriate package and therefore could not fully accept the HP Director of Marking EMEA position, he would begin performing tasks associated with that job. HP 185.  Between May - September 2010, Plaintiff made numerous trips back and forth between Massachusetts, England, France and Spain in order to perform various tasks with respect to the duties associated with the HP Director of EMEA Marketing position.  *Id.*  During this time, Plaintiff also held himself out as the Director of EMEA Marketing.  Plaintiff wrote a memo to "All HP Networking Employees" which announced the new HP Networking EMEA Marketing organization to come into effect on July 1, 2010.  HP 314.  Plaintiff also received a salary as the HP Director of EMEA Marketing during this time.

Sometime during this time, Plaintiff states that he was provided with some numbers of the relocation package that HP was reviewing, but those numbers were only partial and had not yet been approved.  HP 186.  There is an "Approval Request Form" in the record which shows that the un-approved relocation package was estimated to be $711,881.  HP 70.  Mike Banic, an employee at HP, wrote an email to the Plan Administrator stating that he "reviewed elements of the expat package with John over the phone" and "performed an online search for rental properties in Bracknell to address his concern about the housing subsidy."  HP 237.  The email also provided a link that according to Mr. Banick, listed "several properties … that could be afforded with the housing allowance."  *Id.*

By September 2010, Plaintiff was frustrated that he had not received information about the relocation/ex-patriate package beyond the estimate that had not yet been approved, among other things.  HP 185-86.  On September 20, 2010, Plaintiff informed HP that he would not be willing to relocate to England and take the Director of EMEA Marketing position.  HP 187.  Plaintiff was taken off HP's payroll effective September 24, 2010.  HP 72.

### 3.    *Plaintiff's Claim for Benefits*

On October 29, 2010, Plaintiff submitted a claim for severance and other benefits, with the assistance of his former counsel, to the Plan Administrator for the VP Severance Plan.  HP 72-79. Plaintiff argued that he was entitled to benefits under the VP Severance Plan and the Retention

1    Agreement because he never unconditionally accepted the position offered by HP as he had not

2    yet been provided the relocation/ex-patriate package, and in any event, the position offered by HP

3    was not comparable to his position at 3Com.  Plaintiff's former lawyer had assumed that if HP had

4    offered Plaintiff a comparable job at HP after its acquisition of 3Com, Plaintiff would not be

5    eligible for severance benefits.  *See* HP 73 ("Mr. Vincenzo is not entitled to receive benefits if he

6    'refuses an offer of comparable position'").  Plaintiff's counsel argued that HP's Director of

7    EMEA Marketing position was not comparable to his VP of Marketing position at 3Com because

8    of the change in location, decrease in total compensation, and reduction in scope of Plaintiff's job

9    responsibilities and authority.  HP 74-75.  With his claim, Plaintiff also made a request for

10   documents under ERISA of nineteen separate items, which is discussed in a separate section

11   below.  HP 76-78.

12          Having not received any response to the claim or request for documents for over 100 days,

13   on February 8, 2011, Plaintiff's counsel wrote a letter to HP:

> Under the terms of the Severance Plan, the company was required to
> notify Mr. Vincenzo in writing within 90 days of receipt of Mr.
> Vincenzo's claim letter as to whether his claim was granted or
> denied.  Assuming that the company received the October 29, 2010
> claim letter on Monday, November 1, 2010, the ninety day response
> period ended on January 30, 2011.

18   HP 133.  Plaintiff's counsel also wrote that he had "received no documents from the company in

19   response to [his] ERISA request for 19 categories of documents[.]"  *Id.*  On February 14, 2011,

20   Plaintiff's counsel spoke with Jeannie Leahy, Vice President of HP's Legal Department, regarding

21   the company's untimely response to Plaintiff's claim, and then emailed Mr. Leahy the original

22   claim for benefits and the follow-up letter from February 8, 2011.  HP 122.

23          On February 18, 2011, the Plan Administrator for the VP Severance Plan denied Plaintiff's

24   claim.  HP 136-43.  The denial came in the form of a letter addressed to Plaintiff's formal counsel,

25   signed by an unnamed Plan Administrator of the VP Severance Plan, on HP's letterhead.  *See id.*

26   First, the Plan Administrator described the position HP offered to Plaintiff, and found that "Mr.

27   Vincenzo accepted this offer of employment, and became an employee of HP on June 1, 2010."

28   HP 136-37.  The Plan Administrator wrote:

United States District Court
Northern District of California

6

The VP Plan and the Retention Agreement provide benefits to covered employees who lost their employment as a result of a reduction-in-force, a reorganization, or a job elimination.  The terms of the VP Plan further provide that an employee is not eligible to receive benefits if he or she:

1.  voluntarily terminates employment, or

2.  refuses an offer of a comparable position (as determined by the Plan Administrator) at 3Com, or in the event of a sale, acquisition or other change of control of 3Com, its successor.

HP 137.  The Plan Administrator then separately addressed Plaintiff's claim for benefits under the VP Severance Plan and the Retention Agreement.

The Plan Administrator denied Plaintiff's claim for benefits under the VP Severance Plan upon finding that the HP Director of Marketing EMEA position offered to Plaintiff was "comparable" to his job at 3Com.  Plaintiff's counsel had argued that the job was not comparable because of the change in location, decrease in total compensation, and reduction in scope of Plaintiff's job responsibilities and authority.  HP 74-75.  The Plan Administrator addressed each of these arguments, and ultimately "determined that the position offered to Mr. Vincenzo was a 'comparable' position for purposes of [the VP Severance] Plan[.]"  HP 137-40.

The Plan Administrator then denied Plaintiff's claim for benefits under the Retention Agreement:

The Plan Administrator has also determined that, for the purposes of the Retention Agreement, based on the facts outline above, Mr. Vincenzo did not lose his job due to a reduction in force, reorganization or job elimination.  Mr. Vincenzo accepted a job with HP, under terms and conditions outlined in the March 2010 offer letter, that provided that he would have a title of "Director Marketing 1" and that his job responsibilities "would remain similar to your current responsibilities at 3Com until further notice."  In integrating the 3Com business line that Mr. Vincenzo supported into the much larger HP business unit, HP management wished to retain Mr. Vincenzo and hoped to make use of his expertise in world-wide marketing for the 3Com production line.  However, due to HP's size, no single person was assigned to handle world-wide marketing for that business line; rather, responsibilities were divided up along the three main geographical regions served by HP: Americas, EMEA, and APJ.  Thus, there was ample opportunity for Mr. Vincenzo to remain employed with HP and to take on a challenging

role.  He chose not to do so, and he was therefore terminated for
failure to perform the responsibilities of his job.  As a result, his
termination was due to non-performance of duties, and no other
reason.

HP 141.

### 4.   *Plaintiff's Appeal of the Denial of his Claim for Benefits*

In the letter denying Plaintiff's claim for benefits, the Plan Administrator described a

process by which Plaintiff could appeal the Plan Administrator's decision to HP's Welfare

Benefits Administration Committee (hereafter "Committee").  HP 141-42.  Although the denial

letter indicated that Plaintiff was required to submit an appeal within sixty days of the denial of his

claim, the parties agreed to extend this time in order to pursue settlement negotiations.  HP 154.

On June 13, 2011, Plaintiff submitted his appeal to the Committee.  HP 157-79.  Plaintiff

primarily articulated the same arguments from his initial claim for benefits−that Plaintiff never

unconditionally accepted the position as HP's Director of Marketing for the EMEA region because

he had never received information regarding his relocation/ex-patriate package, and in any event,

the position offered by HP was not comparable to the position he held at 3Com.

On August 31, 2011, the Committee denied Plaintiff's appeal, affirming the denial of his

claim for benefits.  HP 305-08.  The denial came in the form of a letter addressed to Plaintiff's

formal counsel, written by Ms. Leahy on behalf of the Committee, and was on HP's letterhead.

*See id.*  First, the Committee "rejected [the] argument that Mr. Vincenzo did not voluntarily

accept, or only conditionally accepted, the new job offered to him by HP, which was a director-

level marketing job for the EMEA region, located in England."  HP 305.  The Committee wrote, in

relevant part:

Your appeal stated that Mr. Vincenzo only signed and returned the
offered letter because he "felt compelled to sign/accept the offer
letter" but the stated deadline.  The Committee found no evidence
that anyone forced him to accept the offer.  The Committee further
found that Mr. Vincenzo's handwritten notations on the fax cover
page did not invalidate his acceptance of the HP offer, and further
found that the fact that he had reservations about some of the terms
of the offer did not invalidate his acceptance of the offer.

As indicated in your appeal, the Committee found that Mr. Vincenzo
performed substantial and continuing services in his new HP

8

position following the closing of the HP-3Com acquisition, including traveling back and forth from the U.S. to Europe several times. This also demonstrated that Mr. Vincenzo had accepted the job with HP. The argument that he performed these services reluctantly and only because he "wanted to be a team player" did not invalidate his acceptance of the offer.

HP 305. The Committee summarized this first finding as follows:

The terms of the VP Plan required covered executives to have lost their jobs due to (1) reduction-in-force, (2) reorganization, or (3) job elimination. Because he was not terminated on any of these grounds, but rather was considered to have voluntarily terminated due to his unwillingness to continue to perform the requirements of the job in the manner specified by his management, the Committee found him to be ineligible for severance benefits under the Plan.

HP 306.

Next, the Committee rejected Plaintiff's "other, alternative arguments made on appeal," such that "the position offered by HP was not comparable to the position previously held by Mr. Vincenzo[.]" HP 306. The Committee rejected this argument based primarily on the same reasons as the Plan Administrator. HP 306-08.

### 5.  *Plaintiff's Request for Documents under ERISA*

In Plaintiff's initial claim for benefits, he made a request for nineteen categories of documents under ERISA. The categories are repetitive, compose two and a half pages of text, and may be paraphrased as follows:

- All documents including 3Com severance plans, including but not limited to the "entire" VP Severance Plan and Retention Agreement (Plaintiff also attached the VP Severance Plan and Retention Agreement as exhibits with his claim for benefits);

- The annual reports and annual financial reports for the Severance Plan;

- All rules, procedures, policies, guidelines or protocols established by 3Com, HP and/or the Plan Administrator to administer the Severance Plan, whether or not they were relied upon in making any decision related to Plaintiff's claim or other participants' claims for benefits under the Severance Plan;

- All documents demonstrating that decisions to grant or deny benefits under the Severance Plan are made in accordance with the Severance Plan and have been applied consistently;

- A complete copy of Plaintiff's claim file and any documentation pertaining

9

1    to or relied upon in determining Plaintiff's claim, whether or not it is
     deemed to be part of Plaintiff's claim file;

2    •  All communications between Plaintiff and HP, and Plaintiff and 3Com,
3       regarding the HP job of Director of Marketing in the EMEA region,
        including the job offer, Plaintiff's conditional acceptance, Plaintiff's request
4       to obtain information about the job, and aspects of the job such as
        responsibilities, authority, compensation, the need to relocate to England,
5       and any relocation/ex-pat policy or package;

6    •  All documents constituting the merger agreement between 3Com and HP;

7    •  All documents discussing the termination of Plaintiff's employment.

8    HP 79-78.  On February 8, 2011, Plaintiff's former counsel wrote a follow-up letter to HP

9    regarding his claim for benefits, and noted in that letter that he had not yet received any response

10   to his ERISA request for nineteen documents.  HP 133.

11       In the Plan Administrator's letter denying Plaintiff's initial claim for benefits, the Plan

12   Administrator wrote the following regarding Plaintiff's request for documents:

13   •  The copy of the VP Plan and the Retention Agreement that you attached to
        your claim constitute both the full plan document and summary plan
14      description for each of those documents.  The Plan Administrator is not
        aware of any other 3Com or HP severance plans or programs covering Mr.
15      Vincenzo.

16   •  We have requested but not received a copy of any Form 5500 that 3Com
        may have filed for the VP Plan.  Because it is classified as a "welfare
17      benefit plan," if it covered fewer than 100 employees, the plan would have
        been exempt from the Form 5500 filing.  Furthermore, because the VP Plan
18      was unfunded, no financial statements would have been due or prepared for
        the VP Plan.
19

20   •  We will be mailing you, under separate cover, copies of the 3Com Section
        16 Severance Plan and the 3Com Above Grade Severance Plan, which the
21      Administrator relied upon in making its decision here.  The other executive
        agreements referenced are available for your review on the SEC's website,
22      under 3Com's public securities filings.

23   •  The remaining items requested (internal communications, notes, etc.) are
        not documents which the Administrator has an obligation to produce under
24      ERISA.

25   HP 142.  The Plan Administrator also described the procedure for Plaintiff to appeal the Plan

26   Administrator's decision, and wrote: "You (or your representative) will have the right to receive,

27   upon request and free of charge, reasonable access to, and copies of, documents, records and other

28

United States District Court
Northern District of California

1    information (other than legally privileged documents, records, or information) relevant to your

2    claim for benefits."  HP 141.

3          Before Plaintiff filed his appeal of the denial of benefits, Plaintiff's former attorney

4    communicated with HP regarding the request for documents.  In a letter dated March 24, 2011 and

5    addressed to Ms. Leahy, Plaintiff again requested the documents listed in his initial claim for

6    benefits.  Plaintiff's former counsel, writing on behalf of Plaintiff, informed Ms. Leahy that

7    Plaintiff had not yet received the two severance plans which HP indicated it would be mailing

8    under separate cover.  HP 151.  He also indicated that he could not locate the "other executive

9    agreements" on the SEC website without more information, and questioned "whether telling Mr.

10   Vincenzo to go search SEC websites is a proper response to a request for ERISA documents[.]"

11   *Id*.  He also wrote that "many" of the documents HP refused to produce were specifically required

12   by ERISA's statutory and regulatory obligations, as they were directly related to how the

13   severance plans are interpreted, or to Plaintiff's claim for benefits.  HP 152.  On March 30, 2011,

14   HP produced copies of certain 3Com severance plans and individual employment/retention

15   agreements, but did not produce any other documents.  Pl. Motion at 10 (citing HP 154).

16         On June 11, 2011, Plaintiff appealed the Plan Administrator's decision to deny him

17   benefits to the committee, and reiterated the same lengthy request for documents that was in his

18   initial claim for benefits.  *See* HP 176-79.  The Committee's letter denying Plaintiff's appeal does

19   not mention Plaintiff's request for documents.  *See* HP 305-08.

20         **B.**     **Plaintiff's Allegations**

21         On July 3, 2012, Plaintiff filed the instant lawsuit against HP, the 3Com Severance Plan,

22   the VP Severance Plan, and the Stock Plan, asserting a claim under ERISA, § 502(a)(1)(B), 29

23   U.S.C. § 1132(a)(1)(B), for benefits owed to him under the "Defendant Plan," as well as a claim

24   for statutory penalties under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), for Defendants' failure to

25   comply with Plaintiff's request for information under ERISA.  *See* Dkt. No. 1 (Complaint).  On

26   August 10, 2012, Defendant Stock Plan filed a motion to dismiss Plaintiff's complaint—as to the

27   Stock Plan only—on basis that the Stock Plan was not governed by ERISA.  *See* Dkt. No. 13

28   (Defendant 3Com Corporation 2003 Stock Plan's Motion to Dismiss Plaintiff's Complaint for

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1  Benefits and Relief under ERISA).  Upon finding that the Stock Plan was not an ERISA plan by

2  its express terms, and that Plaintiff had not alleged any "surrounding circumstances" that, if true,

3  would make the Stock Plan an ERISA plan, the Court granted the Stock Plan's motion to dismiss

4  and granted Plaintiff leave to amend his complaint.  *See* Dkt. No. 29 (Order Granting Defendant

5  3Com Corporation 2003 Stock Plan's Motion to Dismiss).

6      On October 24, 2012, Plaintiff filed a First Amended Complaint.  *See* Dkt. No. 33 (First

7  Amended Complaint) ("FAC").  In response to the Court's order dismissing Plaintiff's ERISA

8  claims against the Stock Plan, Plaintiff added the following allegation:

> Even if the STOCK PLAN was not expressly intended to be a
> pension plan under ERISA, a pension plan was created by
> "surrounding circumstances" 29 U.S.C. § 1002(2)(A) because the
> STOCK PLAN was administered in a way that had the effect of
> providing retirement income to employees; the STOCK PLAN
> resulted in a deferral of income by employees extending to
> termination of covered employment or beyond; and communications
> to STOCK PLAN participants suggested that the STOCK PLAN
> was established or maintained for either or both of these purposes.

FAC ¶ 5.  In the First Amended Complaint, Plaintiff also added a third breach of contract claim

against the Stock Plan.  Pursuant to the parties' stipulation and court order, the third breach of

contract claim against the Stock Plan is not addressed in the instant Cross-Motions for Summary

Judgment.  *See* Dkt. Nos. 37, 39.

### C.    Defendant's Motion for Summary Judgment[4]

Defendants contend that the VP Severance Plan is entitled to summary judgment on

Plaintiff's claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), because the Plan

Administrator did not abuse its discretion in denying Plaintiff's claim for severance benefits for

two independent reasons.  First, Defendants argue that Plaintiff's refusal to relocate to England

constituted a voluntary termination disqualifying him from severance.  Second, in the event the

---

[4] The Court summarizes Defendants' arguments from the following motion papers: (1)
Defendants' Motion for Judgment ("Def. Motion"); (2) Defendants' Opposition to Plaintiff's
Motion for Summary Judgment ("Def. Opp."); and (3) Defendants' Reply in Support of
Defendants' Motion for Summary Judgment ("Def. Reply").  *See* Dkt. Nos. 40, 42, 44.

1   Court finds that Plaintiff never accepted the HP position, Defendants argue that Plaintiff is still

2   ineligible for severance benefits because the position offered by HP was comparable to Plaintiff's

3   job at 3Com.  Defendants also argue that the abuse of discretion standard applies to this Court's

4   review because the VP Severance Plan gave the Plan Administrator discretionary authority to

5   interpret the terms of the plan, there is no structural conflict of interest, and any minor procedural

6   irregularities caused no harm.

7          Defendants further contend that they are entitled to summary judgment on Plaintiff's

8   statutory penalty claim under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), because the Plan

9   Administrator provided Plaintiff with several of the documents he requested, while also notifying

10  Plaintiff that he already possessed some of the requested documents and that other documents did

11  not exist or were not subject to disclosure.  Defendants argue that the Plan Administrator acted in

12  good faith and that Plaintiff suffered no harm as a result of the alleged failure to provide

13  documents, and therefore, penalties are unwarranted.

14         Furthermore, Defendants contend that the 3Com Severance Plan, the Stock Plan, and HP

15  are entitled to summary judgment for three distinct reasons.  First, Defendants argue that the

16  3Com Severance Plan is entitled to summary judgment because Plaintiff was not a participant or

17  beneficiary of the 3Com Severance Plan, and therefore, does not have standing to assert an ERISA

18  claim under this Plan.  Second, Defendants contend that the Stock Plan is entitled to summary

19  judgment because Plaintiff failed to present any evidence of "surrounding circumstances" that

20  would render the Stock Plan an ERISA plan.  Finally, Defendants contend that HP is not a proper

21  defendant in this action because HP merely assumed the non-fiduciary role as a sponsor of the VP

22  Severance Plan, and is not involved in the administration of the VP Severance Plan.

23         **D.      Plaintiff's Motion for Summary Judgment**[5]

24         Plaintiff argues that the Retention Agreement amended the terms of eligibility of the VP

25

26  _____

27         [5] The Court summarizes Plaintiff's arguments from the following motion papers: (1)
    Plaintiff's Motion for Judgment ("Pl. Motion"); (2) Plaintiff's Opposition to Defendants' Motion
    for Summary Judgment ("Pl. Opp."); and (3) Plaintiff's Reply in Support of Plaintiff's Motion for
28  Summary Judgment ("Pl. Reply").  *See* Dkt. Nos. 41, 43, 45.

United States District Court
Northern District of California

1   Severance Plan such that Plaintiff need only prove that "the Company's involuntary termination of

2   [Plaintiff's] employment *with 3Com* [w]as a result of a (i) reduction-in-force, (ii) reorganization,

3   or (iii) job elimination" to prove his eligibility for benefits under the VP Severance Plan.  HP 42

4   (emphasis added).  Plaintiff contends that in denying his claim for benefits, the Plan Administrator

5   and Committee abused their discretion by applying an exclusion to eligibility that is present in the

6   VP Severance Plan but not in the Retention Agreement.  That exclusion makes participants of the

7   VP Severance Plan ineligible to receive severance benefits if the participant "refuses an offer of

8   comparable position (as determined by the Plan Administrator) at 3Com or, in the event of a sale,

9   acquisition or other change of control of 3Com, its successor."  HP 25.

10       Plaintiff argues that he is entitled to severance benefits because he was involuntarily

11   terminated from his position at 3Com when 3Com was acquired by HP and his position was

12   reorganized and/or eliminated.  He notes that the Plan Administrator and Committee failed to

13   address whether Plaintiff was involuntarily terminated from his position *at 3Com*.  Instead, the

14   Plan Administrator and Committee addressed whether Plaintiff accepted and was terminated from

15   the position of Director of Marketing for the EMEA region *at HP*, which Plaintiff contends is

16   irrelevant.  Plaintiff argues that even if he accepted the position at HP, he would still be entitled to

17   benefits under the VP Severance Plan and Retention Agreement.

18       In the alternative, Plaintiff maintains that he never unconditionally accepted HP's offer of

19   employment as the Director of Marketing for the EMEA region, and therefore, cannot be

20   considered to have been voluntarily terminated from his employment at HP.  He argues that

21   Defendants failed to present any evidence in rebuttal of Plaintiff's sworn declarations indicating

22   that Plaintiff never fully accepted the position.  Plaintiff does not argue, as he did before the Plan

23   Administrator and Committee, that he is entitled to benefits because the HP job was not

24   comparable to his position at 3Com.

25       Plaintiff argues that a de novo standard of review should apply to the Plan Administrator's

26   and Committee's denial of Plaintiff's claim for benefits for several reasons.  First, Plaintiff

27   contends that the Plan Administrator was not authorized to delegate its discretionary authority to

28   the Committee, which mandates de novo review.  Next, Plaintiff contends that various

United States District Court
Northern District of California

14

1    irregularities in the claims process constitute "wholesale and flagrant" violations of ERISA and

2    the VP Severance Plan, which is another basis for de novo review. Specifically, Plaintiff argues

3    that Plan Administrator breached its fiduciary duties by failing to correct Plaintiff's

4    misunderstanding of the relevant Plan terms which made Plaintiff eligible for severance benefits

5    even if he was offered a "comparable position" at HP. Plaintiff also contends de novo review

6    should apply on the basis of Defendants' refusal to comply with Plaintiff's information requests

7    under ERISA, as well as Defendants' self-dealing and the Plan Administrator's failure to issue a

8    decision within the time frame provided for in ERISA and the VP Severance Plan. In the

9    alternative, Plaintiff contends that a conflict of interest between the Plan Administrator/Committee

10   and HP influenced the decision to deny Plaintiff severance benefits, which should decrease the

11   level of deference accorded to the Plan Administrator.

12            Plaintiff further argues that Defendants' failure to comply with his ERISA information

13   requests prevented full development of the administrative record and of Plaintiff's claim for

14   benefits. Plaintiff requests statutory penalties in the amount of $110 per day for the 669 day delay

15   between November 28, 2010 and September 28, 2012. November 28, 2010 was the date 30 days

16   after Plaintiff's initial request for documents on October 28, 2010. September 28, 2012 was the

17   day HP first produced a copy of the administrative record with its initial disclosures.

18            Furthermore, Plaintiff contends that the 3Com Severance Plan, Stock Plan, and HP are not

19   entitled to summary judgment for the reasons set forth in Defendants' Motion for Summary

20   Judgment. First, while Plaintiff states that "[h]e is not certain at this time" whether he was a

21   participant of the 3Com Severance Plan, Plaintiff argues that the 3Com Severance Plan is not

22   entitled to summary judgment because Defendants "failed to present any evidence" that he was not

23   a participant of the 3Com Severance Plan. Pl. Opp. at 16-17. Second, Plaintiff contends that the

24   Stock Plan is not entitled to summary judgment as to the ERISA claims because the January 22,

25   2013 Joint CMC Statement & this Court's January 30, 2013 Order establish that no issues related

26   to the Stock Plan would be addressed in the instant cross-motions.[6] Finally, Plaintiff contends that

27   _____

28            [6] Plaintiff also requests additional time to take discovery regarding the Stock Pan under
     Rule 56(d) of the Federal Rules of Civil Procedure.

United States District Court
Northern District of California

1    HP is a proper party in this action because the VP Severance Plan is self-funded from the general

2    assets of HP, and HP serves as the Plan Administrator and Fiduciary.

3    **III.    DISCUSSION**

4        **A.    Standard of Review**

5        The parties dispute which standard of review should apply to determine Plaintiff's claim

6    for benefits under ERISA § 502(a)(1)(B), 28 U.S.C. § 1132(a)(1)(B).  "A denial of benefits

7    challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit

8    Plan gives the administrator or fiduciary discretionary authority to determine eligibility for

9    benefits or to construe the terms of the Plan."  *Firestone Tire and Rubber Company v. Brunch*, 489

10   U.S. 101, 115 (1989).  Thus, courts apply the abuse of discretion standard if the plan terms

11   "unambiguously provide discretion to the administrator."  *Abatie v. Alta Health & Life Ins. Co.*,

12   458 F.3d 955, 963 (9th Cir. 2006).

13       Plaintiff submits his claim for benefits under the VP Severance Plan, which provides that

14   "[t]he Plan Administrator shall have full and unfettered authority and responsibility for

15   administration of the VP Plan, including the discretionary authority to determine eligibility for

16   benefits and amounts of benefit entitlements and to interpret the terms of the VP Plan."  HP 29;

17   *see also* JSUF ¶ 1.  Under Ninth Circuit precedent, the preceding language is sufficient to confer

18   unambiguous discretion upon the Plan Administrator.  *See Abatie*, 458 F.3d at 962-64 (plan

19   administrator must be granted the power to interpret the plan, as opposed to merely identifying the

20   entity to pay and administer benefits).

21       Nevertheless, Plaintiff contends that de novo review should apply because the Plan

22   Administrator was not authorized to delegate its discretionary authority to the Committee—the

23   entity which made the ultimate decision to affirm the Plan Administrator's denial of Plaintiff's

24   claim for benefits.  Plaintiff cites *Shane v. Alberton's Inc*., a case in which the Ninth Circuit found

25   that de novo review applied because the second delegation of discretionary authority was not

26   permitted by the language of the Plan.  504 F.3d 1166, 1172 (9th Cir. 2007) (*citing Jebian v.*

27   *Hewlett-Packard Co. Employee Benefits Organization Income Protection*, 349 F.3d 1098, 1105

28   (9th Cir. 2003)).  In considering whether the district court properly found an unauthorized

United States District Court
Northern District of California

delegation of authority, the *Shane* court noted that too much emphasis was placed on the absence of any documentation of the delegation, and stated that "the focus should have been on whether the [] Plan contemplated the possibility of a transfer of discretionary authority … and whether there was evidence establishing delegation[.]"  *Shane*, 504 F.3d at 1171.

The Court finds that the Plan Administrator's delegation of discretionary authority to the Committee was proper.  The VP Severance Plan contemplates the delegation of authority because it specifically provides that "[a]ll determinations, interpretations, rules, and decisions of the Plan Administrator *or its delegates* shall be conclusive and binding…." HP 29 (emphasis added).  There is also ample evidence that the Plan Administrator delegated authority the review Committee.  *See* HP 305-08; Leahy Decl. ¶ 4 ("After HP acquired 3Com, the claims and appeals of the 3Com Plans were reviewed by the HP Plan Committee, or its delegate, who were the counterparts to the former 3Com Plan Administrator and appeals committee").  Thus, under *Shane*, the Plan Administrator's delegation of authority to the Committee was authorized by the VP Severance Plan.

Plaintiff also argues that under *Abatie*, de novo review should apply because the Plan Administrator engaged in "wholesale and flagrant violations of the procedural requirements of ERISA[.]"  *Abatie*, 458 F.3d at 971 (citing e.g., *Blau v. Del Monte Corp.*, 748 F.2d 1348 (9th Cir. 1984) (de novo review applied where the administrator kept the policy details secret from the employees, offered them no claims procedure, and did not provide them in writing the relevant plan information)).  In this case, however, there is no evidence that the Plan Administrator committed the "wholesale and flagrant violations" as contemplated in *Abatie*.  The Plan Administrator provided Plaintiff with the process prescribed in the VP Severance Plan to submit a claim for benefits and appeal.  Plaintiff's contention that the Plan Administrator "misled" him regarding the relevant Plan terms is without merit, as Plaintiff was in possession of the relevant Plan documents at all relevant times.  While there is evidence that the Plan Administrator delayed in processing Plaintiff's claim and failed to comply with certain requests for information under ERISA, these procedural irregularities were minor and thus appropriately weighed as a factor in deciding whether the Plan Administrator abused its discretion.  *Abatie*, 458 F.3d at 968-69.

The Court recognizes, however, that a conflict of interest exists between the Plan Administrator/Committee and HP, as the VP Severance Plan is funded with HP's general assets, and HP representatives also acted as the Plan Administrator and review Committee. *See Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 630 (9th Cir. 2009) ("since it is also the insurer, benefits are paid out of the administrator's own pocket, so by denying benefits, the administrator retains money for itself."). The Supreme Court has held that where a conflict of interest exists between the plan administrator and the funding source, "that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Firestone,* 489 U.S. at 115 (citations omitted); *see also Abatie*, 458 F.3d at 967 (adopting a "case-by-case" approach to weighing a conflict of interest). The Ninth Circuit has stated that a conflict should weigh more heavily when there is evidence of malice or self-dealing, if the administrator "provides inconsistent reasons for denial," "fails to adequately investigate a claim or ask the plaintiff for necessary evidence," or "fails to credit a claimant's reliable evidence." *Abatie*, 458 F.3d at 968-69.

In this case, the Plan Administrator and Committee placed improper emphasis on whether HP offered Plaintiff a "comparable" position to his job at 3Com. As explained below, the Retention Agreement's provision regarding "Eligibility to Receive Severance Benefits" amended and superseded the similar provision in the VP Severance Plan, and did not exclude participants from being eligible to receive severance benefits if they "refuse[] an offer of comparable position" from 3Com's successor. *See* HP 25, 42. Although in his claim for benefits, Plaintiff's former attorney apparently conceded that Plaintiff would not be eligible for benefits if he refused an offer of comparable position, the Plan Administrator and Committee both had a duty as ERISA fiduciaries to properly interpret all documents associated with the VP Severance Plan, and therefore had a duty to decide whether the Retention Agreement's provision governing the terms of eligibility amended and superseded the similar provision in the VP Severance Plan. They failed to do so, and assumed that Plaintiff was ineligible for benefits if HP had offered Plaintiff a comparable position.[7] As explained below, this was in error, and shows a bias indicating that the

---

[7] The extent of this error differs between the Plan Administrator and the Committee. The Plan Administrator separately considered whether Plaintiff was eligible for benefits under the VP

18

conflict of interest in this case should weigh more heavily.  *Abatie*, 458 F.3d at 968-69.

### B.    VP Severance Plan

Taking into account the conflict of interest, the Court does not find that there was an abuse of discretion.  There is an abuse of discretion if a Plan Administrator "(1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact."  *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Id*. (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).  A Plan Administrator's decisions should be upheld "if it is based upon a reasonable interpretation of the plan's terms and was made in good faith."  *Id*. (quoting *Estate of Shockley v. Alyeska Pipeline Serv. Co.,* 130 F.3d 403, 405 (9th Cir. 1997)).  As explained below, the Court finds that the Plan Administrator and Committee did not rely on clearly erroneous findings of fact and reasonably interpreted the relevant provisions of the VP Severance Plan and Retention Agreement.

While the parties seem to agree that the Retention Agreement's provision governing the terms of "Eligibility to Receive Severance Benefits" controls in this case, the Court nevertheless considers whether the Retention Agreement constitutes a valid amendment to the VP Severance Plan, and further whether the Retention Agreement's provision governing the terms of eligibility supersedes the similar provision in the VP Severance Plan because of the material distinction between the two provisions.  Only the VP Severance Plan's provision, and not the Retention Agreement's, excludes Plan participants from being eligible to receive benefits if the participant "refuses an offer of comparable position (as determined by the Plan Administrator) at 3Com or, in the event of a sale, acquisition or other change of control of 3Com, its successor."  *See* HP 25, 42.

---

Severance Plan and Retention Agreement, *see* HP 140, which makes little sense considering the Retention Agreement constitutes an amendment to the VP Severance Plan.  The Committee interpreted the Plans together, but still did not explicitly decide whether the Retention Agreement constitutes an amendment, and still considered Plaintiff's "other, alternative argument" that the HP position was not comparable to his position at 3Com.  HP 306-08.

United States District Court
Northern District of California

1    Both the Plan Administrator and Committee found that HP's Director of EMEA Marketing

2    Position was "comparable" to Plaintiff's job at 3Com, apparently assuming that this determination

3    was relevant to Plaintiff's eligibility for severance benefits.

4         The first question is whether the Retention Agreement constitutes a valid amendment to

5    the VP Severance Plan.  "Section 402 of ERISA requires employee benefits plans to specify both

6    an amendment procedure and a procedure for identifying persons with authority to amend."

7    *Winterrowd v. Am. General Annuity Ins. Co.*, 321 F.3d 933, 937 (9th Cir. 2003) (citing 29 U.S.C.

8    § 1102(b)(3)).  The VP Severance Plan provides that "[t]he Company reserves the right to amend

9    or terminate the VP Plan at any time, with or without notice."  HP 29.  The VP Severance Plan

10   further provides:

11            No officer, employee, or director of the Company has the authority
              to alter, vary or modify the terms of the VP Plan, *other than by*
12            *means of an authorized written amendment to the VP Plan*.  No oral
              or written representations contrary to the terms of the VP Plan and
13            its written amendments shall be binding upon the VP Plan, the Plan
              Administrator or the Company.
14

15   HP 30.  There is no other language indicating what constitutes an "authorized written

16   amendment."  Thus, while the VP Severance Plan's amendment procedure is vague, it requires an

17   "authorized written amendment to the VP Plan," and provides that "Company" is authorized to

18   make such a written amendment.  *See* HP 29-30.  The Retention Agreement is a written document

19   that was "entered into by and between" Plaintiff and 3Com, which is the "Company."  The Court

20   finds that the Retention Agreement complies with the amendment procedure set forth in the VP

21   Severance Plan, and therefore constitutes a valid amendment to the VP Severance Plan.

22        The next question is whether the provision governing "Eligibility to Receive Severance

23   Benefits" in the Retention Agreement supersedes the similar provision in the VP Severance Plan.

24   Section one of the Retention Agreement is entitled "Interpretation/Administration" and provides:

25            The terms of this [Retention] Agreement shall be governed by and
              administered pursuant to the provisions of the [VP Severance] Plan.
26            To the extent that there is any conflict between this Agreement and
              the terms of the Plan, the Plan provisions shall supersede and
27            control; *provided however that, notwithstanding the current Plan
              provisions or any amendments to the Plan after the Effective Date,*
28

                                        20

> *the <u>terms of eligibility</u> and the <u>severance benefits</u> for which the Employee is eligible shall not be less than those set forth in this agreement.*

HP 42 (emphasis added).  Thus, while the Retention Agreement includes a general rule that provisions in the VP Severance Plan will control in the event of a conflict, the Retention Agreement also contains an exception to this general rule when the conflicting provisions are the "terms of eligibility" or the "severance benefits."  *See id.*

The VP Severance Plan's provision governing the "Eligibility to Receive Severance Benefits" contains additional exclusions to eligibility not present in the Retention Agreement. Thus, VP Severance Plan's eligibility provision is narrower than the same provision in the Retention Agreement.  The provision governing "Eligibility to Receive Severance Benefits" in the Retention Agreement controls.

No provision in the VP Severance Plan is inconsistent with this reasoning, notwithstanding the section in the VP Severance Plan which provides that:

> All rights to participate in and receive benefits from the VP [Severance] Plan are governed solely be the terms and conditions of this Summary Plan Description.  This Summary Plan Description supersedes and replaces all prior plan documents and summary plan descriptions governing the VP [Severance] Plan.

HP 25.  This provision says nothing that would restrict the applicability of authorized amendments to the VP Severance Plan.

The provision governing "Eligibility to Receive Severance Benefits" in the Retention Agreement amends and supersedes the provision governing "Eligibility to Receive Severance Benefits" in the VP Severance Plan.  Accordingly, whether HP offered Plaintiff a comparable position is immaterial to the determination of whether Plaintiff is entitled severance benefits, and the decisions of the Plan Administrator and Committee will not be upheld on this basis. Nevertheless, to determine whether there was an abuse of discretion in denying Plaintiff' severance benefits, the Court must still determine whether the denial was properly based upon the finding that Plaintiff had not been involuntarily terminated from his employment with HP as a result of reduction in force, reorganization or job elimination.  The Court finds that there was no abuse of discretion.

Plaintiff argues that this finding was improper for two reasons.  First, Plaintiff argues that the Plan Administrator and Committee improperly considered whether Plaintiff was involuntarily terminated from his position *at HP*, as opposed to only focusing on whether he was involuntarily terminated from his position *at 3Com*.  Plaintiff argues that under the text of the Retention Agreement's provision governing the terms of eligibility, he is entitled to severance benefits because his position *at 3Com* was involuntarily terminated as a result of a reorganization and/or job elimination when HP acquired 3Com and his former position at 3Com was eliminated.  This argument assumes that whether Plaintiff accepted a position at HP is irrelevant to the determination of whether Plaintiff is entitled to benefits.

The Court disagrees with Plaintiff's first argument.  The section governing "Eligibility to Receive Severance Benefits" in the Retention Agreement provides:

> The Company shall provide the Employee with the severance benefits … upon the Company's involuntary termination of the Employee's employment *with 3Com* as a result of a (i) reduction-in-force, (ii) reorganization, or (iii) job elimination….

HP 42 (emphasis added).  Under Plaintiff's interpretation, continued employment by HP after the reorganization would be irrelevant.  This interpretation makes little sense: as to the "reorganization" eligibility, all VPs who became VPs at HP after the reorganization would have had their employment by 3 COM terminated and be eligible for severance benefits−even if they had identical titles and identical duties at HP.  Similarly, any 3Com VP who transitioned onto a VP position at HP with a different title −even if the duties were the same−would be entitled to severance benefits because his employment "at 3Com" was terminated by "job elimination" or by "reorganization."

The Plan Administrator and the Committee interpreted this provision to apply where the employee was terminated by 3Com, or, after the acquisition, by its successor HP.  They both found that Plaintiff was not eligible for benefits because he did not lose his job *at HP* due to a reduction-in-force, reorganization or job elimination.  *See* HP 137-41, 305-07.  The Plan Administrator and Committee assumed that HP could stand in 3Com's shoes such that Plaintiff would only be entitled to severance benefits "upon [HP]'s involuntary termination of [Plaintiff]'s

22

employment *with [HP]* as a result of a (i) reduction-in-force, (ii) reorganization, or (iii) job

elimination….”  HP 42.  While the provision governing terms and eligibility in the Retention

Agreement does not specifically address whether 3Com’s successor may stand in 3Com’s shoes−a

distinction between the Retention Agreement and VP Severance Plan−considering HP’s

acquisition of 3Com and assumption of 3Com’s rights and obligations, it is reasonable to assume

that HP does stand in 3Com’s shoes.  The relevant question is *why* the employee was separated.  If

it was a job elimination, etc., then benefits are due.  If not, no benefits are due.  The Court finds

that the Plan Administrator and Committee did not abuse their discretion in this regard.

Plaintiff’s second, alternative argument is that the Plan Administrator and Committee

abused their discretion in finding that Plaintiff was not involuntarily terminated from his position

at HP by virtue of Plaintiff’s acceptance of the position and voluntary termination.  Plaintiff states

that at the time he submitted his “acceptance” to HP’s offer on approximately March 5, 2010,

Plaintiff also made handwritten notations on the fax cover sheet of his acceptance which stated

that he “could not completely accept the offer without receiving information about the relocation

and ex-pat package.”  HP 184 (Declaration of John Vincenzo in Support of Appeal re: Claim for

Benefits ¶ 5).  The Committee acknowledged that plaintiff made “handwritten notations on the fax

cover page,” but found that this did not invalidate Plaintiff’s acceptance of HP’s offer.  HP 305.

Neither party has presented evidence of this fax cover sheet to the Court.

Despite Plaintiff’s purported conditional acceptance, the Court does not find an abuse of

discretion.  The Committee found that “Mr. Vincenzo performed substantial and continuing

services in his new HP position following the closing of the HP-3Com acquisition, including

traveling back and forth from the U.S. to Europe several times.”  HP 305.  This finding was

reasonable considering Plaintiff’s admission that between May and September 2010, he was

willing to perform the tasks of the Director of EMEA Marketing position to “assist” HP.  HP 185.

Plaintiff was also paid a salary by HP during the time he performed such tasks, and further held

himself out as the Director of EMEA Marketing by writing a memo to the “All HP Networking

Employees” to announce the new HP EMEA Marketing organizational structure effective June 1,

2010.  *See* HP 314.  Moreover, although Plaintiff states that in March/April 2010, he told his

1   manager Steve Dietch that he would begin work preparations for the job before receiving the

2   relocation package and fully accepting the position, Plaintiff submitted no evidence to show any

3   subsequent communication or understanding with HP that his work should not be interpreted as

4   full acceptance of the position.  *See id.*

5          In sum, the Court finds the Plan Administrator and Committee did not abuse their

6   discretion in finding that Plaintiff was not entitled to benefits under the VP Severance Plan

7   because they reasonably found that Plaintiff voluntarily terminated his employment at HP after

8   working in the position of Director of EMEA Marketing for several months.  To the extent the

9   Plan Administrator and Committee denied benefits to Plaintiff upon reasoning that HP offered

10  Plaintiff a comparable position, they did so in error.  Nevertheless, this error does not amount to

11  an abuse of discretion given their alternative determinations which are supported by the record and

12  Plan documents.

13         **C.      Statutory Penalties**

14         In Plaintiff's second claim for relief, Plaintiff requests that statutory penalties be assessed

15  against Defendants for their failure to comply with Plaintiff's requests for information in violation

16  of ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1).  Plaintiff argues that he was entitled to receive all

17  information relevant to his claim, which includes several documents which Defendants refused to

18  produce.  Plaintiff contends that Defendants' refusal to comply with his requests for information

19  was prejudicial and prevented the full development of the administrative record.  Plaintiff requests

20  that the Court award him $73,590 in statutory penalties, which constitutes a $110 daily penalty for

21  the 669 days between Plaintiff's initial request for documents on November 28, 2010, and when

22  HP provided the administrative record to Plaintiff with its initial disclosures on September 28,

23  2012.  Pl. Opp. at 15-16.

24         Section 1132(c)(1) provides, in relevant part:

25              Any Administrator … who … fails or refuses to comply with a
                request for any information which such administrator is required by
26              this subchapter to furnish to a participant or beneficiary (unless such
                failure or refusal results from matters reasonably beyond the control
27              of the administrator) by mailing the material requested … within 30
                days after such request may in the court's discretion be personally
28

United States District Court
Northern District of California

> liable to such participant or beneficiary in the amount of *up to $100*
> a day from the date of such failure or refusal, and the court may in
> its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1) (emphasis added).  As an initial matter, the Court notes that Plaintiff's

request for a $110 daily penalty exceeds the $100 daily maximum penalty.  *See id.*

In support of his request for penalties, Plaintiff cites 29 C.F.R. § 2560.503-1(h), which

governs the "procedure[s] by which a claimant shall have a reasonable opportunity to appeal an

adverse benefit determination[.]"  *See id.*  Subsection (2) of that regulation provides, in relevant

part:

> The claims procedure of a plan will not be deemed to provide a
> claimant with a reasonable opportunity for full and fair review of a
> claim and adverse benefit determination unless the claims
> procedures … (iii) Provide that a claimant shall be provided, upon
> request and free of charge, reasonable access to, and copies of, all
> documents, records, and other information relevant to the claimant's
> claim for benefits.

29 C.F.R. § 2560.503-1(h)(2).  This regulation sets forth the information which must be included

in an adverse benefit determination for a claimant to pursue an appeal.  *See id.*  The Plan

Administrator's letter denying Plaintiff severance benefits complied with 29 C.F.R. § 2560.503-

1(h)(iii) by informing Plaintiff that if he sought to appeal the Plan Administrator's denial of his

claim, he would "have the right to receive, upon request and free of charge, reasonable access to,

and copies of, documents, records and other information (other than legally privileged documents,

records or information) relevant to [his] claim for benefits."  HP 141.

ERISA § 502(c)(1) allows for penalties to be imposed, in the court's decision, on

administrators who do not "comply with a request for any information which such administrator is

*required by this subchapter* to furnish to a participant or beneficiary … within 30 days after such

request[.]"  29 U.S.C. § 1132(c)(1)(emphasis added).  Because 29 C.F.R. § 2560.503-1(h) governs

information to be provided to a claimant in the event they want to pursue an appeal *after* an

adverse benefit determination, Plaintiff has cited no provision that required the Plan Administrator

to provide any documentation *before* making its initial determination to deny Plaintiff severance

benefits.

After the Plan Administrator denied Plaintiff's initial claim for benefits, 29 U.S.C. §

25

1132(c)(1) and 29 C.F.R. § 2560.503-1(h) required the Plan Administrator to comply with

requests for information which the Plan Administrator was required to furnish within 30 days,

including copies of "all documents, records, and other information relevant to the claimant's claim

for benefits." *See id.* § 2560.503-1(h). Another subpart of section 2560.503-1 defines what

"information shall be considered 'relevant' to a claimant's claim," and states that "such document,

record, or other information" is relevant if it:

> (i) Was relied upon in making the benefit determination;
>
> (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;
>
> (iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination[.]

29 C.F.R. § 2560.503–1(m)(8).

The Plan Administrator denied Plaintiff's claim on February 18, 2011. At that time, the

Plan Administrator was aware of Plaintiff's previous request for documents, and the Court finds

that it was therefore required to produce required documents within thirty days. The Court further

finds that the Plan Administrator failed to produce required documents in two ways. First, the

Plan Administrator relied on the 3Com Section 16 Severance Plan, the 3Com Above Grade

Severance Plan, and other executive agreements when making its decision to deny Plaintiff

severance benefits, but failed to produce such documents to Plaintiff until March 30, 2011, which

was more than thirty days after February 18, 2011. However, such a minor delay did not prejudice

Plaintiff, and the record shows that HP acted in good faith to produce such documents. Therefore,

the Court declines to assess penalties for the Plan Administrator's failure to produce other

severance plans relied upon in the decision denying Plaintiff severance benefits.

Second, the Plan Administrator refused to comply with Plaintiff's request for information

in his claim file, or any communications he had with HP or 3Com regarding the position HP

offered him or his termination. In the decision denying Plaintiff's claim for benefits, the Plan

Administrator wrote: "The remaining items requested (internal communications, notes, etc.) are

United States District Court
Northern District of California

26

not documents which the Administrator has an obligation to produce under ERISA." HP 142.  The

Plan Administrator provided no authority for such a proposition, nor did it respond to Plaintiff's

subsequent request for such documents before Plaintiff submitted his appeal to the Committee.

  The Plan Administrator was required to provide Plaintiff with any documents or

communications that were "relied upon in making the benefit determination," or were "submitted,

considered, or generated in the course of making the benefit determination." 29 C.F.R. §

2560.503–1(m)(8).  It is clear from the Plan Administrator's decision that communications

between HP and Plaintiff regarding the job offer were relevant to its determination to deny

Plaintiff benefits.  The Plan Administrator's refusal to provide such documents was in bad faith

and prejudiced Plaintiff's ability to support his appeal to the Committee.  Such conduct was not so

egregious, however, as to warrant a $100 daily penalty.  Nevertheless, under these circumstances,

some penalty is appropriate to deter similar conduct in the future.  Therefore, the Court will

impose a $1000 penalty for the Plan Administrator's failure to comply with this information

request.

  **D.**  **3Com Severance Plan**

  While Plaintiff is owed severance benefits under the VP Severance Plan, the same is not

true for the 3Com Severance Plan.  Only ERISA plan "participants" and "beneficiaries" are

empowered to seek benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), or statutory

penalties under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1).  It is undisputed that 3Com had

distinct severance plans for VP Executives and lower-level employees.  It is also undisputed that

Plaintiff, as the Vice President of Corporate Marketing at 3Com, was eligible to participate in the

VP Severance Plan because he was a position "with a U.S. Salary Grade 22 or greater or a U.S.

Salary Grade S09 ('Executives')."  HP 25.  Thus, it necessarily follows that Plaintiff was *not*

eligible to participate in the 3Com Severance Plan, which requires that the Plan participant be "in

positions with a U.S. Salary Grade 21 and below or S01 through S08."  HP 33.  Moreover,

Plaintiff has submitted no evidence to show that he was a participant of the 3Com Severance Plan.

Accordingly, the Court finds that Plaintiff does not have standing assert an ERISA claim for

severance benefits against the 3Com Severance Plan.  *See Leeson v. Transamerica Disability*

United States District Court
Northern District of California

*Income Plan*, 671 F.3d 969 (9th Cir. 2012).

      **E.**      **Stock Plan**

      Plaintiff's ERISA claims against the Stock Plan also fail.  This Court has already held that by its express terms, the Stock Plan is not an ERISA plan.  *See* Dkt. No. 29 (Order Granting Defendant 3Com Corporation 2003 Stock Plan's Motion to Dismiss).  The Court granted Plaintiff leave to amend in order to allege "surrounding circumstances" that would make the Stock Plan an ERISA plan.  *See id.*  While Plaintiff's First Amendment Complaint contains conclusory allegations that the Stock Plan was an ERISA plan as a result of "surrounding circumstances," *see* First Amended Complaint ¶ 5, Plaintiff has submitted no evidence, and in fact, has conducted no discovery, to prove such allegations.  This case has proceeded to summary judgment, thus Plaintiff "can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts" supporting his allegations.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted).  Plaintiff has not done so, and therefore, the Stock Plan is entitled to summary judgment on Plaintiff's ERISA claims.

      Furthermore, Plaintiff's contention that pursuant to the parties' stipulation and court order, "issues related to the Stock Plan would be resolved after this motion," is without merit.  *See* Pl. Opp. at 16.  This Court's order dated January 30, 2013 provides that "[o]pening briefs on Cross Motions regarding the Standard of Review and ERISA claims shall be filed on May 3, 2013." Dkt. No. 39.  Clearly, "ERISA claims" includes ERISA claims asserted against the Stock Plan.

      **F.**      **HP**

      The parties also dispute whether HP is a proper defendant in this action.  The Ninth Circuit has recently held that "potential liability under 29 U.S.C. § 1132(a)(1)(B) is not limited to a benefits plan or the plan administrator."  *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1207 (9th Cir. 2011).  The court stated that "parties other than plans can be sued for money damages under … § 1132(a)(1)(B), as long as that party's individual liability is established."  *Id.*

      There is no dispute that the VP Severance Plan is funded solely from HP's general assets since its acquisition of 3Com.  JSUF ¶ 2; Leahy Decl. ¶ 3.  There is also no dispute that HP representatives acted as the Plan Administrator and the review Committee.  Leahy Decl. ¶ 4; *see*

United States District Court
Northern District of California

28

1     *also* HP 136-43, 305-08. On this basis, Plaintiff argues that HP's "individual liability is

2     established," making HP a proper defendant in this action. *Cyr*, 642 F.3d at 1207.

3             Defendants contend, however, that *Cyr* requires a "fact-specific inquiry" to determine

4     whether HP was "sufficiently involved" in the "administration" of the VP Severance Plan. Def.

5     Reply at 10. Implicit in Defendants' argument is that the responsibility to pay a participant's

6     legitimate claims is insufficient to establish "individual liability." Rather, an entity must be

7     involved with the "administration" of the plan. Although HP representatives acted as the Plan

8     Administrator and Committee, Defendants contend that the HP representatives were acting as

9     independent ERISA fiduciaries, and as such, their role in the administration of the VP Severance

10     Plan cannot be imputed to HP.

11             The Court finds that HP is a proper defendant in this action. Nothing in *Cyr* limits

12     potential defendants to entities which administer, rather than fund, an ERISA plan. Since the

13     Ninth Circuit's decision in *Cyr*, at least two courts in this district have stated that the entity with

14     the responsibility to pay benefit claims is a proper defendant in an ERISA action. *See Cox v. Allin*

15     *Corp. Plan*, No. 12-5880-SBA, 2013 WL 1832647, at *4 (N.D. Cal. May 1, 2013) ("A proper

16     defendant in a § 1132(a)(1)(B) claim is one who has authority to resolve benefit claims or who has

17     responsibility to pay them."); *Sender v. Franklin Res., Inc.*, -- F.Supp.2d ---, No. 11-3828-EMC,

18     2013 WL 1087827, at *11, (N.D. Cal. Mar. 14, 2013) ("In determining who is a logical defendant,

19     a court considers who has authority to resolve benefit claims or who has responsibility to pay

20     them."). Moreover, HP did not only fund the VP Severance Plan. HP representatives acted as the

21     Plan Administrator and the Committee to administer the Plan, and the letters denying Plaintiff's

22     claim and appeal were on HP letterhead. Thus, HP has not demonstrated that its representatives

23     were acting independent of HP's interests such that HP was not involved in the administration of

24     the VP Severance Plan. *Cyr*, 642 F.3d at 1207.

25   **IV.    CONCLUSION**

26             For the foregoing reasons, Plaintiff's Motion for Summary Judgment and Defendants'

27     Motion for Summary Judgment are GRANTED in part and DENIED in part. Defendants did not

28     abuse their discretion in denying Plaintiff benefits. Defendants HP and the VP Severance Plan are

United States District Court
Northern District of California

29

ordered to pay Plaintiff a penalty of $1,000.00.

The parties shall participate in a mediation or settlement conference not later than September 6, 2013.  The parties shall notify the Court whether they will participate in a private mediation, court annexed mediation, or a judicial settlement conference, within one week of this order, and any need for a court referral in that regard.  Cross motions for summary judgment on the remaining Stock Plan claim will be filed as follows:

| | |
|---|---|
| Opening briefs: | October 25, 2013 |
| Responsive briefs: | November 8, 2013 |
| Reply briefs: | December 6, 2013 |

IT IS SO ORDERED.

Dated: June 28, 2013

JOSEPH C. SPERO
United States Magistrate Judge