UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN VINCENZO,

        Plaintiff,

    v.

HEWLETT-PACKARD COMPANY, et al.,

        Defendants.

Case No. 12-cv-03480-JCS

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Dkt. Nos. 40-41**

## I.    INTRODUCTION

This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1101 *et seq*.  Plaintiff John Vincenzo ("Plaintiff") filed this lawsuit against Defendants Hewlett-Packard Company ("HP"), 3Com Corporation Severance Benefit Plan ("3Com Severance Plan"), 3Com Severance Plan for Vice Presidents ("VP Severance Plan"), and 3Com Corporation 2003 Stock Plan ("Stock Plan").  Plaintiff alleges that Defendants violated ERISA § 502(a)(1)(B), 28 U.S.C. § 1132(a)(1)(B), by wrongfully denying him severance benefits and stock options after he was involuntarily terminated from his employment upon HP's acquisition of 3Com.  Plaintiff further alleges that Defendants violated ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), by refusing to comply with Plaintiff's information requests, and therefore, should be assessed statutory penalties.  The parties filed Cross-Motions for Summary Judgment on Plaintiff's ERISA claims as well as the applicable standard of review.[1]  The Court held a hearing on June 21, 2013 at 9:30 a.m.  For the reasons explained below, both Cross-Motions are

_____

[1] Pursuant to the parties' stipulation and court order, Plaintiff's third claim for relief, a breach of contract claim against Defendant Stock Plan, is not addressed in the instant Cross-Motions.  *See* Dkt. Nos. 37, 39.

1   GRANTED in part and DENIED in part.[2]

2   **II.    BACKGROUND**

3       **A.    Factual and Procedural Background**[3]

4          1.    *3Com's VP Severance Plan and Retention Agreement*

5       Plaintiff was the Vice President of Corporate Marketing at 3Com.  As such, Plaintiff was a

6   participant of the 3Com Severance Plan for Vice Presidents ("VP Severance Plan").  The section

7   of the VP Severance Plan governing the terms of "Eligibility to Receive Severance Benefits"

8   provides, in relevant part:

9           Executives who are employed by the Company are eligible to
10          receive benefits upon the termination of their employment with
        3Com as a result of a (i) reduction-in-force, (ii) reorganization, or
11          (iii) job elimination….

        Executives are not eligible to receive benefits under the VP Plan
12          upon the occurrence of any of the following:

13              •  The Executive is terminated for reasons other than a
14                 reduction-in-force, reorganization or job elimination;

15              •  The Executive voluntarily terminates his/her
               employment;

16              •  The Executive refuses an offer of a comparable position
17                 (as determined by the Plan Administrator) at 3Com or, in
               the event of a sale, acquisition or other change of control
18                 of 3Com, its successor….

19  Dkt. No. 40-3 (Declaration of Jeannie Leahy in Support of Defendants' Motion for Summary

20  Judgment, or in the Alternative, Summary Adjudication, on Standard of Review and Plaintiff's

21  ERISA Claims ("Leahy Decl."), Ex. A (Administrative Record, bates-labeled HP 1-353))

22  (hereafter "HP") 25.  The VP Severance Plan, which was "Amended and Restated Effective

23  September 14, 2009," further provides that "[a]ll rights to participate in and receive benefits from

24  the VP Plan are governed solely by the terms and conditions of this Summary Plan Description,"

25

26      [2] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).
27      [3] The following constitutes facts which the parties have stipulated to be undisputed or which the Court found to be undisputed.  *See* Dkt. No. 40-1 (Joint Statement of Undisputed
28  Material Facts for Parties' Cross-Motions on Summary Judgment, or in the Alternative, Summary Adjudication, on Standard of Review and Plaintiff's ERISA Claims) ("JSUF").

United States District Court
Northern District of California

1  which "supersedes and replaces all prior plan documents and summary plan descriptions

2  governing the VP Plan."  *Id.*

3          When discussions regarding the acquisition of 3Com began, 3Com offered its "critical"

4  employees a Key Employee Retention Severance Benefits Agreement (hereafter "Retention

5  Agreement"), which purports to amend the terms of eligibility and severance benefits of the VP

6  Severance Plan.  Specifically, the Retention Agreement provides:

> The terms of this [Retention] Agreement shall be governed by and
> administered pursuant to the provisions of the [VP Severance] Plan.
> To the extent that there is any conflict between this Agreement and
> the terms of the Plan, the Plan provisions shall supersede and
> control; *provided however that, notwithstanding the current Plan
> provisions or any amendments to the Plan after the Effective Date,
> the terms of eligibility and the severance benefits for which the
> Employee is eligible shall not be less than those set forth in this
> agreement.*

HP 42 (emphasis added).  The Retention Agreement further states that "the Company seeks to

confirm the Employee's eligibility for severance benefits to ensure the continued dedication and

objectivity of the Employee and to provide the Employee with additional financial security."  *Id.*

        The Retention Agreement contains a similar provision governing the "Eligibility to

Receive Severance Benefits" as the VP Severance Plan.  Section 3 of the Retention Agreement

reads, in relevant part:

> The Company shall provide the Employee with the severance
> benefits … upon the Company's involuntary termination of the
> Employee's employment with 3Com as a result of a (i) reduction-in-
> force, (ii) reorganization, or (iii) job elimination.…

HP 42.  However, the Retention Agreement does not include the same exceptions to eligibility

described in the VP Severance Plan.  *See id.*  Specifically, while the VP Severance Plan provides

that Executives are ineligible to receive severance benefits when "[t]he Executive refuses an offer

of a comparable position (as determined by the Plan Administrator) at 3Com or, in the event of a

sale, acquisition or other change of control of 3Com, its successor," the Retention Agreement does

not.  *See* HP 25, 42.  The Retention Agreement does provide, however, that "[i]f the Employee's

employment terminates for any reason other than the conditions specified in Section 3 of this

Agreement, then the Employee shall not be entitled to receive severance or other benefits under

3

1   this Agreement or any severance and/or benefit plans sponsored by the Company."  HP 43.

2           2.    *HP's Acquisition of 3Com and Offer of Employment*

3         In November 2009, HP announced its acquisition of 3Com.  Following HP's

4   announcement of the acquisition, HP began discussions with Plaintiff about a new role at HP as

5   the Directory of Marketing in the Europe, Middle East and Asia ("EMEA") regions, which would

6   have required Plaintiff to temporarily relocate from Massachusetts to England for a period of

7   twelve to thirty-six months.  HP 312.  On February 26, 2010, HP sent a letter to Plaintiff offering

8   him this position, which required Plaintiff to accept the offer by March 5, 2010.  HP 208-11.  HP's

9   acquisition of 3Com was complete in April 2010, at which time Plaintiff's position at 3Com was

10  eliminated.

11        While Plaintiff was interested in the HP job offer and relocation to England, he was

12  concerned about the relocation/ex-patriate package that he would be offered, among other things.

13  The offer letter sent on February 26, 2010 was silent about any relocation/ex-patriate package.  HP

14  208-11.  On March 1, 2010, Plaintiff wrote an email to HP's Director of Human Resources,

15  Martha Comfort, and HP's Vice President of World Wide Marketing and Plaintiff's manager,

16  Steve Dietch, explaining that he could not accept HP's offer completely until he saw and

17  understood the relocation/ex-patriate package.  HP 214.  Martha Comfort responded to Plaintiff's

18  email indicating that Plaintiff should follow up about the relocation package with Steve Dietch

19  and Beverly Webb.  HP 215-16.  Plaintiff responded to Martha Comfort's email indicating that he

20  would follow up with Steve Dietch.  HP 215.

21        Plaintiff signed and submitted HP's offer letter on approximately March 5, 2010.  Plaintiff

22  asserts that he "felt compelled" to do so because of HP's March 5, 2010 deadline.  HP 184

23  (Declaration of John Vincenzo in Support of Appeal re: Claim for Benefits ¶ 5).  However, at the

24  same time Plaintiff faxed his acceptance of the letter on approximately March 5, 2010, he also sent

25  HP a cover fax sheet with a handwritten note stating that he "could not completely accept the offer

26  without receiving information about the relocation and ex-patriate package."  HP 184, 305.

27  Neither the signed offer letter nor the fax cover sheet with Plaintiff's handwritten note is in

28  evidence before the Court.

4

In March - April 2010, Plaintiff told Steve Dietch that even though he had not received the information on the relocation/ex-patriate package and therefore could not fully accept the HP Director of Marking EMEA position, he would begin performing tasks associated with that job. HP 185.  Between May - September 2010, Plaintiff made numerous trips back and forth between Massachusetts, England, France and Spain in order to perform various tasks with respect to the duties associated with the HP Director of EMEA Marketing position.  *Id*.  During this time, Plaintiff also held himself out as the Director of EMEA Marketing.  Plaintiff wrote a memo to "All HP Networking Employees" which announced the new HP Networking EMEA Marketing organization to come into effect on July 1, 2010.  HP 314.  Plaintiff also received a salary as the HP Director of EMEA Marketing during this time.

Sometime during this time, Plaintiff states that he was provided with some numbers of the relocation package that HP was reviewing, but those numbers were only partial and had not yet been approved.  HP 186.  There is an "Approval Request Form" in the record which shows that the un-approved relocation package was estimated to be $711,881.  HP 70.  Mike Banic, an employee at HP, wrote an email to the Plan Administrator stating that he "reviewed elements of the expat package with John over the phone" and "performed an online search for rental properties in Bracknell to address his concern about the housing subsidy."  HP 237.  The email also provided a link that according to Mr. Banick, listed "several properties … that could be afforded with the housing allowance."  *Id*.

By September 2010, Plaintiff was frustrated that he had not received information about the relocation/ex-patriate package beyond the estimate that had not yet been approved, among other things.  HP 185-86.  On September 20, 2010, Plaintiff informed HP that he would not be willing to relocate to England and take the Director of EMEA Marketing position.  HP 187.  Plaintiff was taken off HP's payroll effective September 24, 2010.  HP 72.

### 3.   *Plaintiff's Claim for Benefits*

On October 29, 2010, Plaintiff submitted a claim for severance and other benefits, with the assistance of his former counsel, to the Plan Administrator for the VP Severance Plan.  HP 72-79.  Plaintiff argued that he was entitled to benefits under the VP Severance Plan and the Retention

Agreement because he never unconditionally accepted the position offered by HP as he had not yet been provided the relocation/ex-patriate package, and in any event, the position offered by HP was not comparable to his position at 3Com.  Plaintiff's former lawyer had assumed that if HP had offered Plaintiff a comparable job at HP after its acquisition of 3Com, Plaintiff would not be eligible for severance benefits.  *See* HP 73 ("Mr. Vincenzo is not entitled to receive benefits if he 'refuses an offer of comparable position'").  Plaintiff's counsel argued that HP's Director of EMEA Marketing position was not comparable to his VP of Marketing position at 3Com because of the change in location, decrease in total compensation, and reduction in scope of Plaintiff's job responsibilities and authority.  HP 74-75.  With his claim, Plaintiff also made a request for documents under ERISA of nineteen separate items, which is discussed in a separate section below.  HP 76-78.

Having not received any response to the claim or request for documents for over 100 days, on February 8, 2011, Plaintiff's counsel wrote a letter to HP:

> Under the terms of the Severance Plan, the company was required to notify Mr. Vincenzo in writing within 90 days of receipt of Mr. Vincenzo's claim letter as to whether his claim was granted or denied.  Assuming that the company received the October 29, 2010 claim letter on Monday, November 1, 2010, the ninety day response period ended on January 30, 2011.

HP 133.  Plaintiff's counsel also wrote that he had "received no documents from the company in response to [his] ERISA request for 19 categories of documents[.]"  *Id.*  On February 14, 2011, Plaintiff's counsel spoke with Jeannie Leahy, Vice President of HP's Legal Department, regarding the company's untimely response to Plaintiff's claim, and then emailed Mr. Leahy the original claim for benefits and the follow-up letter from February 8, 2011.  HP 122.

On February 18, 2011, the Plan Administrator for the VP Severance Plan denied Plaintiff's claim.  HP 136-43.  The denial came in the form of a letter addressed to Plaintiff's formal counsel, signed by an unnamed Plan Administrator of the VP Severance Plan, on HP's letterhead.  *See id.*  First, the Plan Administrator described the position HP offered to Plaintiff, and found that "Mr. Vincenzo accepted this offer of employment, and became an employee of HP on June 1, 2010."  HP 136-37.  The Plan Administrator wrote:

The VP Plan and the Retention Agreement provide benefits to covered employees who lost their employment as a result of a reduction-in-force, a reorganization, or a job elimination.  The terms of the VP Plan further provide that an employee is not eligible to receive benefits if he or she:

1.  voluntarily terminates employment, or

2.  refuses an offer of a comparable position (as determined by the Plan Administrator) at 3Com, or in the event of a sale, acquisition or other change of control of 3Com, its successor.

HP 137.  The Plan Administrator then separately addressed Plaintiff's claim for benefits under the VP Severance Plan and the Retention Agreement.

The Plan Administrator denied Plaintiff's claim for benefits under the VP Severance Plan upon finding that the HP Director of Marketing EMEA position offered to Plaintiff was "comparable" to his job at 3Com.  Plaintiff's counsel had argued that the job was not comparable because of the change in location, decrease in total compensation, and reduction in scope of Plaintiff's job responsibilities and authority.  HP 74-75.  The Plan Administrator addressed each of these arguments, and ultimately "determined that the position offered to Mr. Vincenzo was a 'comparable' position for purposes of [the VP Severance] Plan[.]"  HP 137-40.

The Plan Administrator then denied Plaintiff's claim for benefits under the Retention Agreement:

The Plan Administrator has also determined that, for the purposes of the Retention Agreement, based on the facts outline above, Mr. Vincenzo did not lose his job due to a reduction in force, reorganization or job elimination.  Mr. Vincenzo accepted a job with HP, under terms and conditions outlined in the March 2010 offer letter, that provided that he would have a title of "Director Marketing 1" and that his job responsibilities "would remain similar to your current responsibilities at 3Com until further notice."  In integrating the 3Com business line that Mr. Vincenzo supported into the much larger HP business unit, HP management wished to retain Mr. Vincenzo and hoped to make use of his expertise in world-wide marketing for the 3Com production line.  However, due to HP's size, no single person was assigned to handle world-wide marketing for that business line; rather, responsibilities were divided up along the three main geographical regions served by HP: Americas, EMEA, and APJ.  Thus, there was ample opportunity for Mr. Vincenzo to remain employed with HP and to take on a challenging

role.  He chose not to do so, and he was therefore terminated for failure to perform the responsibilities of his job.  As a result, his termination was due to non-performance of duties, and no other reason.

HP 141.

### 4.    _Plaintiff's Appeal of the Denial of his Claim for Benefits_

In the letter denying Plaintiff's claim for benefits, the Plan Administrator described a process by which Plaintiff could appeal the Plan Administrator's decision to HP's Welfare Benefits Administration Committee (hereafter "Committee").  HP 141-42.  Although the denial letter indicated that Plaintiff was required to submit an appeal within sixty days of the denial of his claim, the parties agreed to extend this time in order to pursue settlement negotiations.  HP 154.

On June 13, 2011, Plaintiff submitted his appeal to the Committee.  HP 157-79.  Plaintiff primarily articulated the same arguments from his initial claim for benefits—that Plaintiff never unconditionally accepted the position as HP's Director of Marketing for the EMEA region because he had never received information regarding his relocation/ex-patriate package, and in any event, the position offered by HP was not comparable to the position he held at 3Com.

On August 31, 2011, the Committee denied Plaintiff's appeal, affirming the denial of his claim for benefits.  HP 305-08.  The denial came in the form of a letter addressed to Plaintiff's formal counsel, written by Ms. Leahy on behalf of the Committee, and was on HP's letterhead.  _See id._  First, the Committee "rejected [the] argument that Mr. Vincenzo did not voluntarily accept, or only conditionally accepted, the new job offered to him by HP, which was a director-level marketing job for the EMEA region, located in England."  HP 305.  The Committee wrote, in relevant part:

> Your appeal stated that Mr. Vincenzo only signed and returned the offered letter because "he felt compelled to sign/accept the offer letter" but the stated deadline.  The Committee found no evidence that anyone forced him to accept the offer.  The Committee further found that Mr. Vincenzo's handwritten notations on the fax cover page did not invalidate his acceptance of the HP offer, and further found that the fact that he had reservations about some of the terms of the offer did not invalidate his acceptance of the offer.
>
> As indicated in your appeal, the Committee found that Mr. Vincenzo performed substantial and continuing services in his new HP

position following the closing of the HP-3Com acquisition, including traveling back and forth from the U.S. to Europe several times.  This also demonstrated that Mr. Vincenzo had accepted the job with HP.  The argument that he performed these services reluctantly and only because he "wanted to be a team player" did not invalidate his acceptance of the offer.

HP 305.  The Committee summarized this first finding as follows:

The terms of the VP Plan required covered executives to have lost their jobs due to (1) reduction-in-force, (2) reorganization, or (3) job elimination.  Because he was not terminated on any of these grounds, but rather was considered to have voluntarily terminated due to his unwillingness to continue to perform the requirements of the job in the manner specified by his management, the Committee found him to be ineligible for severance benefits under the Plan.

HP 306.

Next, the Committee rejected Plaintiff's "other, alternative arguments made on appeal," such that "the position offered by HP was not comparable to the position previously held by Mr. Vincenzo[.]"  HP 306.  The Committee rejected this argument based primarily on the same reasons as the Plan Administrator.  HP 306-08.

### 5.    *Plaintiff's Request for Documents under ERISA*

In Plaintiff's initial claim for benefits, he made a request for nineteen categories of documents under ERISA.  The categories are repetitive, compose two and a half pages of text, and may be paraphrased as follows:

- All documents including 3Com severance plans, including but not limited to the "entire" VP Severance Plan and Retention Agreement   (Plaintiff also attached the VP Severance Plan and Retention Agreement as exhibits with his claim for benefits);

- The annual reports and annual financial reports for the Severance Plan;

- All rules, procedures, policies, guidelines or protocols established by 3Com, HP and/or the Plan Administrator to administer the Severance Plan, whether or not they were relied upon in making any decision related to Plaintiff's claim or other participants' claims for benefits under the Severance Plan;

- All documents demonstrating that decisions to grant or deny benefits under the Severance Plan are made in accordance with the Severance Plan and have been applied consistently;

- A complete copy of Plaintiff's claim file and any documentation pertaining

United States District Court
Northern District of California

to or relied upon in determining Plaintiff's claim, whether or not it is deemed to be part of Plaintiff's claim file;

- All communications between Plaintiff and HP, and Plaintiff and 3Com, regarding the HP job of Director of Marketing in the EMEA region, including the job offer, Plaintiff's conditional acceptance, Plaintiff's request to obtain information about the job, and aspects of the job such as responsibilities, authority, compensation, the need to relocate to England, and any relocation/ex-pat policy or package;

- All documents constituting the merger agreement between 3Com and HP;

- All documents discussing the termination of Plaintiff's employment.

HP 79-78.  On February 8, 2011, Plaintiff's former counsel wrote a follow-up letter to HP regarding his claim for benefits, and noted in that letter that he had not yet received any response to his ERISA request for nineteen documents.  HP 133.

In the Plan Administrator's letter denying Plaintiff's initial claim for benefits, the Plan Administrator wrote the following regarding Plaintiff's request for documents:

- The copy of the VP Plan and the Retention Agreement that you attached to your claim constitute both the full plan document and summary plan description for each of those documents.  The Plan Administrator is not aware of any other 3Com or HP severance plans or programs covering Mr. Vincenzo.

- We have requested but not received a copy of any Form 5500 that 3Com may have filed for the VP Plan.  Because it is classified as a "welfare benefit plan," if it covered fewer than 100 employees, the plan would have been exempt from the Form 5500 filing.  Furthermore, because the VP Plan was unfunded, no financial statements would have been due or prepared for the VP Plan.

- We will be mailing you, under separate cover, copies of the 3Com Section 16 Severance Plan and the 3Com Above Grade Severance Plan, which the Administrator relied upon in making its decision here.  The other executive agreements referenced are available for your review on the SEC's website, under 3Com's public securities filings.

- The remaining items requested (internal communications, notes, etc.) are not documents which the Administrator has an obligation to produce under ERISA.

HP 142.  The Plan Administrator also described the procedure for Plaintiff to appeal the Plan Administrator's decision, and wrote: "You (or your representative) will have the right to receive, upon request and free of charge, reasonable access to, and copies of, documents, records and other

United States District Court
Northern District of California

information (other than legally privileged documents, records, or information) relevant to your claim for benefits."  HP 141.

Before Plaintiff filed his appeal of the denial of benefits, Plaintiff's former attorney communicated with HP regarding the request for documents.  In a letter dated March 24, 2011 and addressed to Ms. Leahy, Plaintiff again requested the documents listed in his initial claim for benefits.  Plaintiff's former counsel, writing on behalf of Plaintiff, informed Ms. Leahy that Plaintiff had not yet received the two severance plans which HP indicated it would be mailing under separate cover.  HP 151.  He also indicated that he could not locate the "other executive agreements" on the SEC website without more information, and questioned "whether telling Mr. Vincenzo to go search SEC websites is a proper response to a request for ERISA documents[.]" *Id*.  He also wrote that "many" of the documents HP refused to produce were specifically required by ERISA's statutory and regulatory obligations, as they were directly related to how the severance plans are interpreted, or to Plaintiff's claim for benefits.  HP 152.  On March 30, 2011, HP produced copies of certain 3Com severance plans and individual employment/retention agreements, but did not produce any other documents.  Pl. Motion at 10 (citing HP 154).

On June 11, 2011, Plaintiff appealed the Plan Administrator's decision to deny him benefits to the committee, and reiterated the same lengthy request for documents that was in his initial claim for benefits.  *See* HP 176-79.  The Committee's letter denying Plaintiff's appeal does not mention Plaintiff's request for documents.  *See* HP 305-08.

### B.       Plaintiff's Allegations

On July 3, 2012, Plaintiff filed the instant lawsuit against HP, the 3Com Severance Plan, the VP Severance Plan, and the Stock Plan, asserting a claim under ERISA, § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), for benefits owed to him under the "Defendant Plan," as well as a claim for statutory penalties under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), for Defendants' failure to comply with Plaintiff's request for information under ERISA.  *See* Dkt. No. 1 (Complaint).  On August 10, 2012, Defendant Stock Plan filed a motion to dismiss Plaintiff's complaint−as to the Stock Plan only−on basis that the Stock Plan was not governed by ERISA.  *See* Dkt. No. 13 (Defendant 3Com Corporation 2003 Stock Plan's Motion to Dismiss Plaintiff's Complaint for

1    Benefits and Relief under ERISA).  Upon finding that the Stock Plan was not an ERISA plan by

2    its express terms, and that Plaintiff had not alleged any "surrounding circumstances" that, if true,

3    would make the Stock Plan an ERISA plan, the Court granted the Stock Plan's motion to dismiss

4    and granted Plaintiff leave to amend his complaint.  *See* Dkt. No. 29 (Order Granting Defendant

5    3Com Corporation 2003 Stock Plan's Motion to Dismiss).

6           On October 24, 2012, Plaintiff filed a First Amended Complaint.  *See* Dkt. No. 33 (First

7    Amended Complaint) ("FAC").  In response to the Court's order dismissing Plaintiff's ERISA

8    claims against the Stock Plan, Plaintiff added the following allegation:

> Even if the STOCK PLAN was not expressly intended to be a
> pension plan under ERISA, a pension plan was created by
> "surrounding circumstances" 29 U.S.C. § 1002(2)(A) because the
> STOCK PLAN was administered in a way that had the effect of
> providing retirement income to employees; the STOCK PLAN
> resulted in a deferral of income by employees extending to
> termination of covered employment or beyond; and communications
> to STOCK PLAN participants suggested that the STOCK PLAN
> was established or maintained for either or both of these purposes.

15   FAC ¶ 5.  In the First Amended Complaint, Plaintiff also added a third breach of contract claim

16   against the Stock Plan.  Pursuant to the parties' stipulation and court order, the third breach of

17   contract claim against the Stock Plan is not addressed in the instant Cross-Motions for Summary

18   Judgment.  *See* Dkt. Nos. 37, 39.

19        **C.    Defendant's Motion for Summary Judgment**[4]

20          Defendants contend that the VP Severance Plan is entitled to summary judgment on

21   Plaintiff's claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), because the Plan

22   Administrator did not abuse its discretion in denying Plaintiff's claim for severance benefits for

23   two independent reasons.  First, Defendants argue that Plaintiff's refusal to relocate to England

24   constituted a voluntary termination disqualifying him from severance.  Second, in the event the

25

26        _____

      [4] The Court summarizes Defendants' arguments from the following motion papers: (1)
27   Defendants' Motion for Judgment ("Def. Motion"); (2) Defendants' Opposition to Plaintiff's
     Motion for Summary Judgment ("Def. Opp."); and (3) Defendants' Reply in Support of
28   Defendants' Motion for Summary Judgment ("Def. Reply").  *See* Dkt. Nos. 40, 42, 44.

United States District Court
Northern District of California

1 Court finds that Plaintiff never accepted the HP position, Defendants argue that Plaintiff is still

2 ineligible for severance benefits because the position offered by HP was comparable to Plaintiff's

3 job at 3Com.  Defendants also argue that the abuse of discretion standard applies to this Court's

4 review because the VP Severance Plan gave the Plan Administrator discretionary authority to

5 interpret the terms of the plan, there is no structural conflict of interest, and any minor procedural

6 irregularities caused no harm.

7      Defendants further contend that they are entitled to summary judgment on Plaintiff's

8 statutory penalty claim under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), because the Plan

9 Administrator provided Plaintiff with several of the documents he requested, while also notifying

10 Plaintiff that he already possessed some of the requested documents and that other documents did

11 not exist or were not subject to disclosure.  Defendants argue that the Plan Administrator acted in

12 good faith and that Plaintiff suffered no harm as a result of the alleged failure to provide

13 documents, and therefore, penalties are unwarranted.

14      Furthermore, Defendants contend that the 3Com Severance Plan, the Stock Plan, and HP

15 are entitled to summary judgment for three distinct reasons.  First, Defendants argue that the

16 3Com Severance Plan is entitled to summary judgment because Plaintiff was not a participant or

17 beneficiary of the 3Com Severance Plan, and therefore, does not have standing to assert an ERISA

18 claim under this Plan.  Second, Defendants contend that the Stock Plan is entitled to summary

19 judgment because Plaintiff failed to present any evidence of "surrounding circumstances" that

20 would render the Stock Plan an ERISA plan.  Finally, Defendants contend that HP is not a proper

21 defendant in this action because HP merely assumed the non-fiduciary role as a sponsor of the VP

22 Severance Plan, and is not involved in the administration of the VP Severance Plan.

23     **D.**     **Plaintiff's Motion for Summary Judgment**[5]

24      Plaintiff argues that the Retention Agreement amended the terms of eligibility of the VP

25

26

27

28

    [5] The Court summarizes Plaintiff's arguments from the following motion papers: (1) Plaintiff's Motion for Judgment ("Pl. Motion"); (2) Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl. Opp."); and (3) Plaintiff's Reply in Support of Plaintiff's Motion for Summary Judgment ("Pl. Reply").  *See* Dkt. Nos. 41, 43, 45.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Severance Plan such that Plaintiff need only prove that "the Company's involuntary termination of

2   [Plaintiff's] employment *with 3Com* [w]as a result of a (i) reduction-in-force, (ii) reorganization,

3   or (iii) job elimination" to prove his eligibility for benefits under the VP Severance Plan.  HP 42

4   (emphasis added).  Plaintiff contends that in denying his claim for benefits, the Plan Administrator

5   and Committee abused their discretion by applying an exclusion to eligibility that is present in the

6   VP Severance Plan but not in the Retention Agreement.  That exclusion makes participants of the

7   VP Severance Plan ineligible to receive severance benefits if the participant "refuses an offer of

8   comparable position (as determined by the Plan Administrator) at 3Com or, in the event of a sale,

9   acquisition or other change of control of 3Com, its successor."  HP 25.

10          Plaintiff argues that he is entitled to severance benefits because he was involuntarily

11   terminated from his position at 3Com when 3Com was acquired by HP and his position was

12   reorganized and/or eliminated.  He notes that the Plan Administrator and Committee failed to

13   address whether Plaintiff was involuntarily terminated from his position *at 3Com*.  Instead, the

14   Plan Administrator and Committee addressed whether Plaintiff accepted and was terminated from

15   the position of Director of Marketing for the EMEA region *at HP*, which Plaintiff contends is

16   irrelevant.  Plaintiff argues that even if he accepted the position at HP, he would still be entitled to

17   benefits under the VP Severance Plan and Retention Agreement.

18          In the alternative, Plaintiff maintains that he never unconditionally accepted HP's offer of

19   employment as the Director of Marketing for the EMEA region, and therefore, cannot be

20   considered to have been voluntarily terminated from his employment at HP.  He argues that

21   Defendants failed to present any evidence in rebuttal of Plaintiff's sworn declarations indicating

22   that Plaintiff never fully accepted the position.  Plaintiff does not argue, as he did before the Plan

23   Administrator and Committee, that he is entitled to benefits because the HP job was not

24   comparable to his position at 3Com.

25          Plaintiff argues that a de novo standard of review should apply to the Plan Administrator's

26   and Committee's denial of Plaintiff's claim for benefits for several reasons.  First, Plaintiff

27   contends that the Plan Administrator was not authorized to delegate its discretionary authority to

28   the Committee, which mandates de novo review.  Next, Plaintiff contends that various

United States District Court
Northern District of California

1  irregularities in the claims process constitute "wholesale and flagrant" violations of ERISA and

2  the VP Severance Plan, which is another basis for de novo review.  Specifically, Plaintiff argues

3  that Plan Administrator breached its fiduciary duties by failing to correct Plaintiff's

4  misunderstanding of the relevant Plan terms which made Plaintiff eligible for severance benefits

5  even if he was offered a "comparable position" at HP.  Plaintiff also contends de novo review

6  should apply on the basis of Defendants' refusal to comply with Plaintiff's information requests

7  under ERISA, as well as Defendants' self-dealing and the Plan Administrator's failure to issue a

8  decision within the time frame provided for in ERISA and the VP Severance Plan.  In the

9  alternative, Plaintiff contends that a conflict of interest between the Plan Administrator/Committee

10  and HP influenced the decision to deny Plaintiff severance benefits, which should decrease the

11  level of deference accorded to the Plan Administrator.

12         Plaintiff further argues that Defendants' failure to comply with his ERISA information

13  requests prevented full development of the administrative record and of Plaintiff's claim for

14  benefits.  Plaintiff requests statutory penalties in the amount of $110 per day for the 669 day delay

15  between November 28, 2010 and September 28, 2012.  November 28, 2010 was the date 30 days

16  after Plaintiff's initial request for documents on October 28, 2010.  September 28, 2012 was the

17  day HP first produced a copy of the administrative record with its initial disclosures.

18          Furthermore, Plaintiff contends that the 3Com Severance Plan, Stock Plan, and HP are not

19  entitled to summary judgment for the reasons set forth in Defendants' Motion for Summary

20  Judgment.  First, while Plaintiff states that "[h]e is not certain at this time" whether he was a

21  participant of the 3Com Severance Plan, Plaintiff argues that the 3Com Severance Plan is not

22  entitled to summary judgment because Defendants "failed to present any evidence" that he was not

23  a participant of the 3Com Severance Plan.  Pl. Opp. at 16-17.  Second, Plaintiff contends that the

24  Stock Plan is not entitled to summary judgment as to the ERISA claims because the January 22,

25  2013 Joint CMC Statement & this Court's January 30, 2013 Order establish that no issues related

26  to the Stock Plan would be addressed in the instant cross-motions.[6]  Finally, Plaintiff contends that

27  _____

28         [6]  Plaintiff also requests additional time to take discovery regarding the Stock Pan under
Rule 56(d) of the Federal Rules of Civil Procedure.

1  HP is a proper party in this action because the VP Severance Plan is self-funded from the general

2  assets of HP, and HP serves as the Plan Administrator and Fiduciary.

3  **III.      DISCUSSION**

4        **A.      Standard of Review**

5        The parties dispute which standard of review should apply to determine Plaintiff's claim

6  for benefits under ERISA § 502(a)(1)(B), 28 U.S.C. § 1132(a)(1)(B). "A denial of benefits

7  challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit

8  Plan gives the administrator or fiduciary discretionary authority to determine eligibility for

9  benefits or to construe the terms of the Plan." *Firestone Tire and Rubber Company v. Brunch*, 489

10  U.S. 101, 115 (1989). Thus, courts apply the abuse of discretion standard if the plan terms

11  "unambiguously provide discretion to the administrator." *Abatie v. Alta Health & Life Ins. Co.*,

12  458 F.3d 955, 963 (9th Cir. 2006).

13        Plaintiff submits his claim for benefits under the VP Severance Plan, which provides that

14  "[t]he Plan Administrator shall have full and unfettered authority and responsibility for

15  administration of the VP Plan, including the discretionary authority to determine eligibility for

16  benefits and amounts of benefit entitlements and to interpret the terms of the VP Plan." HP 29;

17  *see also* JSUF ¶ 1. Under Ninth Circuit precedent, the preceding language is sufficient to confer

18  unambiguous discretion upon the Plan Administrator. *See Abatie*, 458 F.3d at 962-64 (plan

19  administrator must be granted the power to interpret the plan, as opposed to merely identifying the

20  entity to pay and administer benefits).

21        Nevertheless, Plaintiff contends that de novo review should apply because the Plan

22  Administrator was not authorized to delegate its discretionary authority to the Committee—the

23  entity which made the ultimate decision to affirm the Plan Administrator's denial of Plaintiff's

24  claim for benefits. Plaintiff cites *Shane v. Alberton's Inc*., a case in which the Ninth Circuit found

25  that de novo review applied because the second delegation of discretionary authority was not

26  permitted by the language of the Plan. 504 F.3d 1166, 1172 (9th Cir. 2007) (*citing Jebian v.

27  Hewlett-Packard Co. Employee Benefits Organization Income Protection*, 349 F.3d 1098, 1105

28  (9th Cir. 2003)). In considering whether the district court properly found an unauthorized

delegation of authority, the *Shane* court noted that too much emphasis was placed on the absence of any documentation of the delegation, and stated that "the focus should have been on whether the [] Plan contemplated the possibility of a transfer of discretionary authority … and whether there was evidence establishing delegation[.]"  *Shane*, 504 F.3d at 1171.

The Court finds that the Plan Administrator's delegation of discretionary authority to the Committee was proper.  The VP Severance Plan contemplates the delegation of authority because it specifically provides that "[a]ll determinations, interpretations, rules, and decisions of the Plan Administrator *or its delegates* shall be conclusive and binding…." HP 29 (emphasis added). There is also ample evidence that the Plan Administrator delegated authority the review Committee.  *See* HP 305-08; Leahy Decl. ¶ 4 ("After HP acquired 3Com, the claims and appeals of the 3Com Plans were reviewed by the HP Plan Committee, or its delegate, who were the counterparts to the former 3Com Plan Administrator and appeals committee").  Thus, under *Shane*, the Plan Administrator's delegation of authority to the Committee was authorized by the VP Severance Plan.

Plaintiff also argues that under *Abatie*, de novo review should apply because the Plan Administrator engaged in "wholesale and flagrant violations of the procedural requirements of ERISA[.]"  *Abatie*, 458 F.3d at 971 (citing e.g., *Blau v. Del Monte Corp.*, 748 F.2d 1348 (9th Cir. 1984) (de novo review applied where the administrator kept the policy details secret from the employees, offered them no claims procedure, and did not provide them in writing the relevant plan information)).  In this case, however, there is no evidence that the Plan Administrator committed the "wholesale and flagrant violations" as contemplated in *Abatie*.  The Plan Administrator provided Plaintiff with the process prescribed in the VP Severance Plan to submit a claim for benefits and appeal.  Plaintiff's contention that the Plan Administrator "misled" him regarding the relevant Plan terms is without merit, as Plaintiff was in possession of the relevant Plan documents at all relevant times.  While there is evidence that the Plan Administrator delayed in processing Plaintiff's claim and failed to comply with certain requests for information under ERISA, these procedural irregularities were minor and thus appropriately weighed as a factor in deciding whether the Plan Administrator abused its discretion.  *Abatie*, 458 F.3d at 968-69.

1   The Court recognizes, however, that a conflict of interest exists between the Plan

2   Administrator/Committee and HP, as the VP Severance Plan is funded with HP's general assets,

3   and HP representatives also acted as the Plan Administrator and review Committee.  *See Montour*

4   *v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 630 (9th Cir. 2009) ("since it is also the insurer,

5   benefits are paid out of the administrator's own pocket, so by denying benefits, the administrator

6   retains money for itself.").  The Supreme Court has held that where a conflict of interest exists

7   between the plan administrator and the funding source, "that conflict must be weighed as a factor

8   in determining whether there is an abuse of discretion."  *Firestone,* 489 U.S. at 115 (citations

9   omitted); *see also Abatie*, 458 F.3d at 967 (adopting a "case-by-case" approach to weighing a

10   conflict of interest).  The Ninth Circuit has stated that a conflict should weigh more heavily when

11   there is evidence of malice or self-dealing, if the administrator "provides inconsistent reasons for

12   denial," "fails to adequately investigate a claim or ask the plaintiff for necessary evidence," or

13   "fails to credit a claimant's reliable evidence." *Abatie*, 458 F.3d at 968-69.

14   In this case, the Plan Administrator and Committee placed improper emphasis on whether

15   HP offered Plaintiff a "comparable" position to his job at 3Com.  As explained below, the

16   Retention Agreement's provision regarding "Eligibility to Receive Severance Benefits" amended

17   and superseded the similar provision in the VP Severance Plan, and did not exclude participants

18   from being eligible to receive severance benefits if they "refuse[] an offer of comparable position"

19   from 3Com's successor.  *See* HP 25, 42.  Although in his claim for benefits, Plaintiff's former

20   attorney apparently conceded that Plaintiff would not be eligible for benefits if he refused an offer

21   of comparable position, the Plan Administrator and Committee both had a duty as ERISA

22   fiduciaries to properly interpret all documents associated with the VP Severance Plan, and

23   therefore had a duty to decide whether the Retention Agreement's provision governing the terms

24   of eligibility amended and superseded the similar provision in the VP Severance Plan.  They failed

25   to do so, and assumed that Plaintiff was ineligible for benefits if HP had offered Plaintiff a

26   comparable position.[7]  As explained below, this was in error, and shows a bias indicating that the

27   _____

28   [7] The extent of this error differs between the Plan Administrator and the Committee.  The
Plan Administrator separately considered whether Plaintiff was eligible for benefits under the VP

United States District Court
Northern District of California

1    conflict of interest in this case should weigh more heavily.  *Abatie*, 458 F.3d at 968-69.

2          **B.    VP Severance Plan**

3          Taking into account the conflict of interest, the Court does not find that there was an abuse

4    of discretion.  There is an abuse of discretion if a Plan Administrator "(1) renders a decision

5    without explanation, (2) construes provisions of the plan in a way that conflicts with the plain

6    language of the plan, or (3) relies on clearly erroneous findings of fact."  *Boyd v. Bert Bell/Pete*

7    *Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005).  "A finding is 'clearly

8    erroneous' when although there is evidence to support it, the reviewing [body] on the entire

9    evidence is left with the definite and firm conviction that a mistake has been committed."  *Id.*

10   (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).  A Plan

11   Administrator's decisions should be upheld "if it is based upon a reasonable interpretation of the

12   plan's terms and was made in good faith."  *Id.* (quoting *Estate of Shockley v. Alyeska Pipeline*

13   *Serv. Co.,* 130 F.3d 403, 405 (9th Cir. 1997)).  As explained below, the Court finds that the Plan

14   Administrator and Committee did not rely on clearly erroneous findings of fact and reasonably

15   interpreted the relevant provisions of the VP Severance Plan and Retention Agreement.

16         While the parties seem to agree that the Retention Agreement's provision governing the

17   terms of "Eligibility to Receive Severance Benefits" controls in this case, the Court nevertheless

18   considers whether the Retention Agreement constitutes a valid amendment to the VP Severance

19   Plan, and further whether the Retention Agreement's provision governing the terms of eligibility

20   supersedes the similar provision in the VP Severance Plan because of the material distinction

21   between the two provisions.  Only the VP Severance Plan's provision, and not the Retention

22   Agreement's, excludes Plan participants from being eligible to receive benefits if the participant

23   "refuses an offer of comparable position (as determined by the Plan Administrator) at 3Com or, in

24   the event of a sale, acquisition or other change of control of 3Com, its successor."  *See* HP 25, 42.

25

26   _____

Severance Plan and Retention Agreement, *see* HP 140, which makes little sense considering the

27   Retention Agreement constitutes an amendment to the VP Severance Plan.  The Committee
     interpreted the Plans together, but still did not explicitly decide whether the Retention Agreement

28   constitutes an amendment, and still considered Plaintiff's "other, alternative argument" that the HP
     position was not comparable to his position at 3Com.  HP 306-08.

19

United States District Court
Northern District of California

1    Both the Plan Administrator and Committee found that HP's Director of EMEA Marketing

2    Position was "comparable" to Plaintiff's job at 3Com, apparently assuming that this determination

3    was relevant to Plaintiff's eligibility for severance benefits.

4    　　　　The first question is whether the Retention Agreement constitutes a valid amendment to

5    the VP Severance Plan.  "Section 402 of ERISA requires employee benefits plans to specify both

6    an amendment procedure and a procedure for identifying persons with authority to amend."

7    *Winterrowd v. Am. General Annuity Ins. Co.*, 321 F.3d 933, 937 (9th Cir. 2003) (citing 29 U.S.C.

8    § 1102(b)(3)).  The VP Severance Plan provides that "[t]he Company reserves the right to amend

9    or terminate the VP Plan at any time, with or without notice."  HP 29.  The VP Severance Plan

10   further provides:

11   　　　　　　No officer, employee, or director of the Company has the authority
12   　　　　　　to alter, vary or modify the terms of the VP Plan, *other than by*
     　　　　　　*means of an authorized written amendment to the VP Plan.*  No oral
13   　　　　　　or written representations contrary to the terms of the VP Plan and
     　　　　　　its written amendments shall be binding upon the VP Plan, the Plan
14   　　　　　　Administrator or the Company.

15   HP 30.  There is no other language indicating what constitutes an "authorized written

16   amendment."  Thus, while the VP Severance Plan's amendment procedure is vague, it requires an

17   "authorized written amendment to the VP Plan," and provides that "Company" is authorized to

18   make such a written amendment.  *See* HP 29-30.  The Retention Agreement is a written document

19   that was "entered into by and between" Plaintiff and 3Com, which is the "Company."  The Court

20   finds that the Retention Agreement complies with the amendment procedure set forth in the VP

21   Severance Plan, and therefore constitutes a valid amendment to the VP Severance Plan.

22   　　　　The next question is whether the provision governing "Eligibility to Receive Severance

23   Benefits" in the Retention Agreement supersedes the similar provision in the VP Severance Plan.

24   Section one of the Retention Agreement is entitled "Interpretation/Administration" and provides:

25   　　　　　　The terms of this [Retention] Agreement shall be governed by and
     　　　　　　administered pursuant to the provisions of the [VP Severance] Plan.
26   　　　　　　To the extent that there is any conflict between this Agreement and
     　　　　　　the terms of the Plan, the Plan provisions shall supersede and
27   　　　　　　control; *provided however that, notwithstanding the current Plan*
     　　　　　　*provisions or any amendments to the Plan after the Effective Date,*
28

20

*the terms of eligibility and the severance benefits for which the Employee is eligible shall not be less than those set forth in this agreement.*

HP 42 (emphasis added).  Thus, while the Retention Agreement includes a general rule that provisions in the VP Severance Plan will control in the event of a conflict, the Retention Agreement also contains an exception to this general rule when the conflicting provisions are the "terms of eligibility" or the "severance benefits."  *See id.*

The VP Severance Plan's provision governing the "Eligibility to Receive Severance Benefits" contains additional exclusions to eligibility not present in the Retention Agreement. Thus, VP Severance Plan's eligibility provision is narrower than the same provision in the Retention Agreement.  The provision governing "Eligibility to Receive Severance Benefits" in the Retention Agreement controls.

No provision in the VP Severance Plan is inconsistent with this reasoning, notwithstanding the section in the VP Severance Plan which provides that:

> All rights to participate in and receive benefits from the VP [Severance] Plan are governed solely be the terms and conditions of this Summary Plan Description.  This Summary Plan Description supersedes and replaces all prior plan documents and summary plan descriptions governing the VP [Severance] Plan.

HP 25.  This provision says nothing that would restrict the applicability of authorized amendments to the VP Severance Plan.

The provision governing "Eligibility to Receive Severance Benefits" in the Retention Agreement amends and supersedes the provision governing "Eligibility to Receive Severance Benefits" in the VP Severance Plan.  Accordingly, whether HP offered Plaintiff a comparable position is immaterial to the determination of whether Plaintiff is entitled severance benefits, and the decisions of the Plan Administrator and Committee will not be upheld on this basis. Nevertheless, to determine whether there was an abuse of discretion in denying Plaintiff severance benefits, the Court must still determine whether the denial was properly based upon the finding that Plaintiff had not been involuntarily terminated from his employment with HP as a result of reduction in force, reorganization or job elimination.  The Court finds that there was no abuse of discretion.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Plaintiff argues that this finding was improper for two reasons.  First, Plaintiff argues that

2    the Plan Administrator and Committee improperly considered whether Plaintiff was involuntarily

3    terminated from his position *at HP*, as opposed to only focusing on whether he was involuntarily

4    terminated from his position *at 3Com*.  Plaintiff argues that under the text of the Retention

5    Agreement's provision governing the terms of eligibility, he is entitled to severance benefits

6    because his position *at 3Com* was involuntarily terminated as a result of a reorganization and/or

7    job elimination when HP acquired 3Com and his former position at 3Com was eliminated.  This

8    argument assumes that whether Plaintiff accepted a position at HP is irrelevant to the

9    determination of whether Plaintiff is entitled to benefits.

10    The Court disagrees with Plaintiff's first argument.  The section governing "Eligibility to

11   Receive Severance Benefits" in the Retention Agreement provides:

12           The Company shall provide the Employee with the severance
             benefits … upon the Company's involuntary termination of the
13           Employee's employment *with 3Com* as a result of a (i) reduction-in-
             force, (ii) reorganization, or (iii) job elimination….
14

15   HP 42 (emphasis added).  Under Plaintiff's interpretation, continued employment by HP after the

16   reorganization would be irrelevant.  This interpretation makes little sense: as to the

17   "reorganization" eligibility, all VPs who became VPs at HP after the reorganization would have

18   had their employment by 3 COM terminated and be eligible for severance benefits–even if they

19   had identical titles and identical duties at HP.  Similarly, any 3Com VP who transitioned onto a

20   VP position at HP with a different title –even if the duties were the same–would be entitled to

21   severance benefits because his employment "at 3Com" was terminated by "job elimination" or by

22   "reorganization."

23    The Plan Administrator and the Committee interpreted this provision to apply where the

24   employee was terminated by 3Com, or, after the acquisition, by its successor HP.  They both

25   found that Plaintiff was not eligible for benefits because he did not lose his job *at HP* due to a

26   reduction-in-force, reorganization or job elimination.  *See* HP 137-41, 305-07.  The Plan

27   Administrator and Committee assumed that HP could stand in 3Com's shoes such that Plaintiff

28   would only be entitled to severance benefits "upon [HP]'s involuntary termination of [Plaintiff]'s

employment *with [HP]* as a result of a (i) reduction-in-force, (ii) reorganization, or (iii) job

elimination….” HP 42. While the provision governing terms and eligibility in the Retention

Agreement does not specifically address whether 3Com's successor may stand in 3Com's shoes−a

distinction between the Retention Agreement and VP Severance Plan−considering HP's

acquisition of 3Com and assumption of 3Com's rights and obligations, it is reasonable to assume

that HP does stand in 3Com's shoes. The relevant question is *why* the employee was separated. If

it was a job elimination, etc., then benefits are due. If not, no benefits are due. The Court finds

that the Plan Administrator and Committee did not abuse their discretion in this regard.

Plaintiff's second, alternative argument is that the Plan Administrator and Committee

abused their discretion in finding that Plaintiff was not involuntarily terminated from his position

at HP by virtue of Plaintiff's acceptance of the position and voluntary termination. Plaintiff states

that at the time he submitted his "acceptance" to HP's offer on approximately March 5, 2010,

Plaintiff also made handwritten notations on the fax cover sheet of his acceptance which stated

that he "could not completely accept the offer without receiving information about the relocation

and ex-pat package." HP 184 (Declaration of John Vincenzo in Support of Appeal re: Claim for

Benefits ¶ 5). The Committee acknowledged that plaintiff made "handwritten notations on the fax

cover page," but found that this did not invalidate Plaintiff's acceptance of HP's offer. HP 305.

Neither party has presented evidence of this fax cover sheet to the Court.

Despite Plaintiff's purported conditional acceptance, the Court does not find an abuse of

discretion. The Committee found that "Mr. Vincenzo performed substantial and continuing

services in his new HP position following the closing of the HP-3Com acquisition, including

traveling back and forth from the U.S. to Europe several times." HP 305. This finding was

reasonable considering Plaintiff's admission that between May and September 2010, he was

willing to perform the tasks of the Director of EMEA Marketing position to "assist" HP. HP 185.

Plaintiff was also paid a salary by HP during the time he performed such tasks, and further held

himself out as the Director of EMEA Marketing by writing a memo to the "All HP Networking

Employees" to announce the new HP EMEA Marketing organizational structure effective June 1,

2010. *See* HP 314. Moreover, although Plaintiff states that in March/April 2010, he told his

1    manager Steve Dietch that he would begin work preparations for the job before receiving the

2    relocation package and fully accepting the position, Plaintiff submitted no evidence to show any

3    subsequent communication or understanding with HP that his work should not be interpreted as

4    full acceptance of the position.  *See id*.

5           In sum, the Court finds the Plan Administrator and Committee did not abuse their

6    discretion in finding that Plaintiff was not entitled to benefits under the VP Severance Plan

7    because they reasonably found that Plaintiff voluntarily terminated his employment at HP after

8    working in the position of Director of EMEA Marketing for several months.  To the extent the

9    Plan Administrator and Committee denied benefits to Plaintiff upon reasoning that HP offered

10   Plaintiff a comparable position, they did so in error.  Nevertheless, this error does not amount to

11   an abuse of discretion given their alternative determinations which are supported by the record and

12   Plan documents.

13          **C.      Statutory Penalties**

14          In Plaintiff's second claim for relief, Plaintiff requests that statutory penalties be assessed

15   against Defendants for their failure to comply with Plaintiff's requests for information in violation

16   of ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1).  Plaintiff argues that he was entitled to receive all

17   information relevant to his claim, which includes several documents which Defendants refused to

18   produce.  Plaintiff contends that Defendants' refusal to comply with his requests for information

19   was prejudicial and prevented the full development of the administrative record.  Plaintiff requests

20   that the Court award him $73,590 in statutory penalties, which constitutes a $110 daily penalty for

21   the 669 days between Plaintiff's initial request for documents on November 28, 2010, and when

22   HP provided the administrative record to Plaintiff with its initial disclosures on September 28,

23   2012.  Pl. Opp. at 15-16.

24          Section 1132(c)(1) provides, in relevant part:

25                  Any Administrator … who … fails or refuses to comply with a
                    request for any information which such administrator is required by
26                  this subchapter to furnish to a participant or beneficiary (unless such
                    failure or refusal results from matters reasonably beyond the control
27                  of the administrator) by mailing the material requested … within 30
                    days after such request may in the court's discretion be personally
28

United States District Court
Northern District of California

24

> liable to such participant or beneficiary in the amount of *up to $100* a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1) (emphasis added).  As an initial matter, the Court notes that Plaintiff's request for a $110 daily penalty exceeds the $100 daily maximum penalty.  *See id.*

In support of his request for penalties, Plaintiff cites 29 C.F.R. § 2560.503-1(h), which governs the "procedure[s] by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination[.]"  *See id.*  Subsection (2) of that regulation provides, in relevant part:

> The claims procedure of a plan will not be deemed to provide a claimant with a reasonable opportunity for full and fair review of a claim and adverse benefit determination unless the claims procedures … (iii) Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

29 C.F.R. § 2560.503-1(h)(2).  This regulation sets forth the information which must be included in an adverse benefit determination for a claimant to pursue an appeal.  *See id.*  The Plan Administrator's letter denying Plaintiff severance benefits complied with 29 C.F.R. § 2560.503-1(h)(iii) by informing Plaintiff that if he sought to appeal the Plan Administrator's denial of his claim, he would "have the right to receive, upon request and free of charge, reasonable access to, and copies of, documents, records and other information (other than legally privileged documents, records or information) relevant to [his] claim for benefits."  HP 141.

ERISA § 502(c)(1) allows for penalties to be imposed, in the court's decision, on administrators who do not "comply with a request for any information which such administrator is *required by this subchapter* to furnish to a participant or beneficiary … within 30 days after such request[.]"  29 U.S.C. § 1132(c)(1)(emphasis added).  Because 29 C.F.R. § 2560.503-1(h) governs information to be provided to a claimant in the event they want to pursue an appeal *after* an adverse benefit determination, Plaintiff has cited no provision that required the Plan Administrator to provide any documentation *before* making its initial determination to deny Plaintiff severance benefits.

After the Plan Administrator denied Plaintiff's initial claim for benefits, 29 U.S.C. §

1132(c)(1) and 29 C.F.R. § 2560.503-1(h) required the Plan Administrator to comply with requests for information which the Plan Administrator was required to furnish within 30 days, including copies of "all documents, records, and other information relevant to the claimant's claim for benefits." *See id.* § 2560.503-1(h).  Another subpart of section 2560.503-1 defines what "information shall be considered 'relevant' to a claimant's claim," and states that "such document, record, or other information" is relevant if it:

> (i) Was relied upon in making the benefit determination;
>
> (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;
>
> (iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination[.]

29 C.F.R. § 2560.503–1(m)(8).

The Plan Administrator denied Plaintiff's claim on February 18, 2011.  At that time, the Plan Administrator was aware of Plaintiff's previous request for documents, and the Court finds that it was therefore required to produce required documents within thirty days.  The Court further finds that the Plan Administrator failed to produce required documents in two ways.  First, the Plan Administrator relied on the 3Com Section 16 Severance Plan, the 3Com Above Grade Severance Plan, and other executive agreements when making its decision to deny Plaintiff severance benefits, but failed to produce such documents to Plaintiff until March 30, 2011, which was more than thirty days after February 18, 2011.  However, such a minor delay did not prejudice Plaintiff, and the record shows that HP acted in good faith to produce such documents.  Therefore, the Court declines to assess penalties for the Plan Administrator's failure to produce other severance plans relied upon in the decision denying Plaintiff severance benefits.

Second, the Plan Administrator refused to comply with Plaintiff's request for information in his claim file, or any communications he had with HP or 3Com regarding the position HP offered him or his termination.  In the decision denying Plaintiff's claim for benefits, the Plan Administrator wrote: "The remaining items requested (internal communications, notes, etc.) are

United States District Court
Northern District of California

1   not documents which the Administrator has an obligation to produce under ERISA." HP 142.  The

2   Plan Administrator provided no authority for such a proposition, nor did it respond to Plaintiff's

3   subsequent request for such documents before Plaintiff submitted his appeal to the Committee.

4        The Plan Administrator was required to provide Plaintiff with any documents or

5   communications that were "relied upon in making the benefit determination," or were "submitted,

6   considered, or generated in the course of making the benefit determination."  29 C.F.R. §

7   2560.503–1(m)(8).  It is clear from the Plan Administrator's decision that communications

8   between HP and Plaintiff regarding the job offer were relevant to its determination to deny

9   Plaintiff benefits.  The Plan Administrator's refusal to provide such documents was in bad faith

10  and prejudiced Plaintiff's ability to support his appeal to the Committee.  Such conduct was not so

11  egregious, however, as to warrant a $100 daily penalty.  Nevertheless, under these circumstances,

12  some penalty is appropriate to deter similar conduct in the future.  Therefore, the Court will

13  impose a $1000 penalty for the Plan Administrator's failure to comply with this information

14  request.

15       **D.**      **3Com Severance Plan**

16       While Plaintiff is owed severance benefits under the VP Severance Plan, the same is not

17  true for the 3Com Severance Plan.  Only ERISA plan "participants" and "beneficiaries" are

18  empowered to seek benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), or statutory

19  penalties under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1).  It is undisputed that 3Com had

20  distinct severance plans for VP Executives and lower-level employees.  It is also undisputed that

21  Plaintiff, as the Vice President of Corporate Marketing at 3Com, was eligible to participate in the

22  VP Severance Plan because he was a position "with a U.S. Salary Grade 22 or greater or a U.S.

23  Salary Grade S09 ('Executives')."  HP 25.  Thus, it necessarily follows that Plaintiff was *not*

24  eligible to participate in the 3Com Severance Plan, which requires that the Plan participant be "in

25  positions with a U.S. Salary Grade 21 and below or S01 through S08."  HP 33.  Moreover,

26  Plaintiff has submitted no evidence to show that he was a participant of the 3Com Severance Plan.

27  Accordingly, the Court finds that Plaintiff does not have standing assert an ERISA claim for

28  severance benefits against the 3Com Severance Plan.  *See Leeson v. Transamerica Disability*

United States District Court
Northern District of California

1    *Income Plan*, 671 F.3d 969 (9th Cir. 2012).

2        **E.    Stock Plan**

3        Plaintiff's ERISA claims against the Stock Plan also fail.  This Court has already held that

4    by its express terms, the Stock Plan is not an ERISA plan.  *See* Dkt. No. 29 (Order Granting

5    Defendant 3Com Corporation 2003 Stock Plan's Motion to Dismiss).  The Court granted Plaintiff

6    leave to amend in order to allege "surrounding circumstances" that would make the Stock Plan an

7    ERISA plan.  *See id.*  While Plaintiff's First Amendment Complaint contains conclusory

8    allegations that the Stock Plan was an ERISA plan as a result of "surrounding circumstances," *see*

9    First Amended Complaint ¶ 5, Plaintiff has submitted no evidence, and in fact, has conducted no

10   discovery, to prove such allegations.  This case has proceeded to summary judgment, thus Plaintiff

11   "can no longer rest on such mere allegations, but must set forth by affidavit or other evidence

12   specific facts" supporting his allegations.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561

13   (1992) (citations omitted).  Plaintiff has not done so, and therefore, the Stock Plan is entitled to

14   summary judgment on Plaintiff's ERISA claims.

15       Furthermore, Plaintiff's contention that pursuant to the parties' stipulation and court order,

16   "issues related to the Stock Plan would be resolved after this motion," is without merit.  *See* Pl.

17   Opp. at 16.  This Court's order dated January 30, 2013 provides that "[o]pening briefs on Cross

18   Motions regarding the Standard of Review and ERISA claims shall be filed on May 3, 2013."

19   Dkt. No. 39.  Clearly, "ERISA claims" includes ERISA claims asserted against the Stock Plan.

20       **F.    HP**

21       The parties also dispute whether HP is a proper defendant in this action.  The Ninth Circuit

22   has recently held that "potential liability under 29 U.S.C. § 1132(a)(1)(B) is not limited to a

23   benefits plan or the plan administrator."  *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202,

24   1207 (9th Cir. 2011).  The court stated that "parties other than plans can be sued for money

25   damages under … § 1132(a)(1)(B), as long as that party's individual liability is established."  *Id.*

26       There is no dispute that the VP Severance Plan is funded solely from HP's general assets

27   since its acquisition of 3Com.  JSUF ¶ 2; Leahy Decl. ¶ 3.  There is also no dispute that HP

28   representatives acted as the Plan Administrator and the review Committee.  Leahy Decl. ¶ 4; *see*

United States District Court
Northern District of California

28

1   *also* HP 136-43, 305-08.  On this basis, Plaintiff argues that HP's "individual liability is

2   established," making HP a proper defendant in this action.  *Cyr*, 642 F.3d at 1207.

3          Defendants contend, however, that *Cyr* requires a "fact-specific inquiry" to determine

4   whether HP was "sufficiently involved" in the "administration" of the VP Severance Plan.  Def.

5   Reply at 10.  Implicit in Defendants' argument is that the responsibility to pay a participant's

6   legitimate claims is insufficient to establish "individual liability."  Rather, an entity must be

7   involved with the "administration" of the plan.  Although HP representatives acted as the Plan

8   Administrator and Committee, Defendants contend that the HP representatives were acting as

9   independent ERISA fiduciaries, and as such, their role in the administration of the VP Severance

10  Plan cannot be imputed to HP.

11         The Court finds that HP is a proper defendant in this action.  Nothing in *Cyr* limits

12  potential defendants to entities which administer, rather than fund, an ERISA plan.  Since the

13  Ninth Circuit's decision in *Cyr*, at least two courts in this district have stated that the entity with

14  the responsibility to pay benefit claims is a proper defendant in an ERISA action.  *See Cox v. Allin*

15  *Corp. Plan*, No. 12-5880-SBA, 2013 WL 1832647, at *4 (N.D. Cal. May 1, 2013) ("A proper

16  defendant in a § 1132(a)(1)(B) claim is one who has authority to resolve benefit claims or who has

17  responsibility to pay them."); *Sender v. Franklin Res., Inc.*, -- F.Supp.2d ---, No. 11-3828-EMC,

18  2013 WL 1087827, at *11, (N.D. Cal. Mar. 14, 2013) ("In determining who is a logical defendant,

19  a court considers who has authority to resolve benefit claims or who has responsibility to pay

20  them.").  Moreover, HP did not only fund the VP Severance Plan.  HP representatives acted as the

21  Plan Administrator and the Committee to administer the Plan, and the letters denying Plaintiff's

22  claim and appeal were on HP letterhead.  Thus, HP has not demonstrated that its representatives

23  were acting independent of HP's interests such that HP was not involved in the administration of

24  the VP Severance Plan.  *Cyr*, 642 F.3d at 1207.

25  **IV.    CONCLUSION**

26         For the foregoing reasons, Plaintiff's Motion for Summary Judgment and Defendants'

27  Motion for Summary Judgment are GRANTED in part and DENIED in part.  Defendants did not

28  abuse their discretion in denying Plaintiff benefits.  Defendants HP and the VP Severance Plan are

United States District Court
Northern District of California

1   ordered to pay Plaintiff a penalty of $1,000.00.

2         The parties shall participate in a mediation or settlement conference not later than

3   September 6, 2013.  The parties shall notify the Court whether they will participate in a private

4   mediation, court annexed mediation, or a judicial settlement conference, within one week of this

5   order, and any need for a court referral in that regard.  Cross motions for summary judgment on

6   the remaining Stock Plan claim will be filed as follows:

7         Opening briefs:      October 25, 2013

8         Responsive briefs:     November 8, 2013

9         Reply briefs:      December 6, 2013

10         IT IS SO ORDERED.

11   Dated: June 28, 2013

13   _____

14   JOSEPH C. SPERO
    United States Magistrate Judge